## In re WILLIAM H.

[Cite as *In re William H.* (1995), 105 Ohio App.3d 761.]

Court of Appeals of Ohio,
Sixth District, Lucas County.

No. L–94–263.

Decided Aug. 18, 1995.

*Joseph R. Scalzo, Jr.*, for appellant.

*Anthony G. Pizza,* Lucas County Prosecuting Attorney, and *Perry Driscoll,* Assistant Prosecuting Attorney, for appellee.

---

ABOOD, Presiding Judge.

This is an appeal from a judgment of the Lucas County Court of Common Pleas, Juvenile Division, which ordered appellant to serve a previously stayed six-month commitment to the Department of Youth Services.

Appointed appellate counsel, Joseph R. Scalzo, has submitted a motion to withdraw pursuant to *Anders v. California* (1967), 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493. In support of his motion, counsel for appellant states that after reviewing the record of the proceedings in the trial court, researching the applicable law and conferring with trial counsel, he was unable to find any meritorious, appealable issues. Counsel for appellant does, however, set forth three potential assignments of error:

"I. The trial court failed to strictly comply with Ohio Juvenile Rule 29[D].

"II. Whether juvenile-appellant was denied the effective assistance of counsel at trial, in violation of his Sixth Amendment rights.

"III. The court abused its discretion by committing juvenile to the Department of Youth Services in violation of Juvenile Rule 35(B)."

The facts giving rise to this appeal are as follows. On September 20, 1993, appellant was adjudicated delinquent by the Lucas County Court of Common Pleas, Juvenile Division, based on a reduced charge of gross sexual imposition. In the same judgment entry the court (1) sentenced appellant to commitment to the Department of Youth Services; (2) stayed the commitment order; and (3) placed appellant on probation. One condition of appellant's probation was his placement in rehabilitative detention at St. Anthony's Villa, Sexual Offenders

Treatment ("SOT") program. A second condition of probation was that he cooperate and participate with treatment.

On June 17, 1994, a motion to show cause why disposition should not be changed was filed by appellant's probation officer, which alleged that "[appellant] violated the court order by leaving the St. Anthony Villa Residential SOT program without permission and is currently A.W.O.L. and his whereabouts at this time are unknown."

On June 24, 1994, a separate complaint that was assigned a separate case number was filed by an officer of the Toledo Police Department, which alleged that appellant "did on listed date break out a window at listed location and escape from his treatment center. While doing so the Def. did cause a counselor * * * to chase him and in the process of that chase did cause other members of that facility to become involved in the chase. Causing much confusion and disruption in the normal school activity."

On July 1, 1994, a hearing was conducted by a referee of the juvenile court. A transcript from the hearing shows that the following exchange took place:

"THE COURT: My understanding, Mr. Driscoll, that there's been an agreement reached in these matters.

"MR. DRISCOLL: Yes, Honor. At this time there's going to be an admission made to Complaint Number 94–11743, violation of safe school ordinance. On that admission, I will not INAUDIBLE, and proceed to the motion to show cause, Your Honor.

"THE COURT: And Mr. Popil, is that your understanding?

"MR. POPIL: Yes, Your Honor. I would like to state for the record I did talk with my client [appellant] this morning. He is aware that he has a right to a trial regarding the window incident. At this time he would like to admit and state what actually happened last week on this offense.

"And he does know potential penalties if he does admit to this offense. He knows his constitutional rights to a trial, to remain silent, that he's presumed innocent, that the prosecutor has to prove beyond a reasonable doubt, the right to call witnesses, etc.

"At this time he wants to give up his rights and admit to the 94 case, with the understanding that the motion to show cause will be dismissed."

At the conclusion of the attorneys' statements, the following exchange took place.

"THE COURT: [Appellant], I'm going to ask you a couple questions just to make sure what your attorney said is correct. You understand that you do have the right to have a trial on this safe school ordinance?

"[APPELLANT]: Yes sir.

"THE COURT: It's my understanding that you don't want a trial and that you're going to admit today, is that right?

"[APPELLANT]: Yes sir.

"THE COURT: And you understand that you are on a stayed commitment. That means that if you admit to this charge today, the Court could lift that stay and send you to D.Y.S., do you understand that that can happen?

"[APPELLANT]: Yes sir.

"THE COURT: No one's forcing you to admit today, you're doing it because you want to?

"[APPELLANT]: Yes sir.

"THE COURT: And no one's made you any promises as to what the Court will do if you admit today?

"[APPELLANT]: Yes sir.

"THE COURT: Is it true then that on June 23rd, 1994, that you broke out a window at St. Anthony Villa?

"[APPELLANT]: Yes sir.

"THE COURT: And it's also true that you were chased?

"[APPELLANT]: Yes sir.

"THE COURT: And this cause[d] disruption and confusion of the school activity at St. Anthony's Villa?

"[APPELLANT]: Yes sir.

"THE COURT: How old were you when this happened?

"[APPELLANT]: Seventeen, sir.

"THE COURT: And St. Anthony's Villa is located in Lucas County, Ohio, correct?

"[APPELLANT]: Yes Sir.

"THE COURT: State satisfied with the admission?

"MR. DRISCOLL: Yes.

"THE COURT: The Court is also satisfied that the admission is knowingly, voluntarily made. The Court therefore finds [appellant] to be in violation of the safe school ordinance."

The transcript shows that the focus of the hearing then changed to disposition. Appellant told the referee that he refused to return to St. Anthony's Villa SOT

program and that if he was returned there he would run away. Following two further hearings and appellant's continued refusal to change his position regarding a return to St. Anthony's Villa, the referee made the following statements on the record:

"THE COURT: This is the Lucas County Court of Common Pleas, Juvenile Division. We're here on this 21st day of July, 1994. We're here in the matter styled * * * [appellant's full name].

"This matter was continued today for final disposition. The Court has continued this matter a number of times. * * *

" * * *

"THE COURT: Okay. The Court will lift the stay on the gross sexual imposition charge, commit you to the Department of Youth Services for a minimum of six months. Court will order that you not be released until you complete sex appropriate treatment in the institution. * * *

" * * *

"THE COURT: This hearing is adjourned. You'll be credited for the time you spent in C.S.I. This hearing is adjourned."

Thereafter the court approved the written recommendation of the referee and ordered the prior stay rescinded and appellant committed to the Department of Youth Services "for a minimum period of six months to age 21." On August 29, 1994, appellant filed a *pro se* notice of appeal, "from the commitments imposed in the above-captioned case on the 28th of July 1994 and from all rulings of the Court on all motions and objections of the juvenile or counsel." On October 4, 1994, counsel was appointed for appellant for purposes of appeal. On January 13, 1995, counsel for appellant filed his brief and request to withdraw as counsel pursuant to *Anders, supra.*

*Anders, supra,* and *State v. Duncan* (1978), 57 Ohio App.2d 93, 11 O.O.3d 83, 385 N.E.2d 323, set forth the procedure to be followed by appointed counsel who desires to withdraw for want of a meritorious, appealable issue. In *Anders,* the United States Supreme Court held that if counsel, after a conscientious examination of the case, determines an appeal to be wholly frivolous, he should so advise the court and request permission to withdraw. *Id.* at 744, 87 S.Ct. at 1400, 18 L.Ed.2d at 498. This request, however, must be accompanied by a brief which identifies anything in the record that could arguably support an appeal. Counsel must also furnish his client with a copy of the brief and request to withdraw and allow the client sufficient time to raise any matters that he chooses. Once these requirements have been satisfied, the appellate court must then conduct a full examination of the proceedings held below to determine if the appeal is indeed

frivolous. If the appellate court determines that the appeal is frivolous, it may grant counsel's request to withdraw and dismiss the appeal.

In this case, appointed counsel for appellant has satisfied the *Anders* requirements. This court notes further that appellant has not filed a *pro se* brief or otherwise responded to counsel's request to withdraw. Accordingly, this court will now proceed to examine the potential assignments of error set forth by appellant's counsel and review the entire record from the trial court to determine if this appeal lacks merit and is wholly frivolous.

■ The first potential assignment of error asserts that appellant was deprived of due process of law because the referee failed to strictly comply with the requirements of Juv.R. 29(D) when it accepted his admission to the new charges. Juv.R. 29(D) provides:

"Initial procedure upon entry of an admission. The court may refuse to accept an admission and shall not accept an admission without addressing the party personally and determining both of the following:

"(1) The party is making the admission voluntarily with understanding of the nature of the allegations and the consequences of the admission;

"(2) The party understands that by entering an admission the party is waiving the right to challenge the witnesses and evidence against the party, to remain silent, and to introduce evidence at the adjudicatory hearing.

"The court may hear testimony, review documents, or make further inquiry, as it considers appropriate, or it may proceed directly to the action required by division (F) of this rule."

Appellant argues that the referee in his case was obligated to strictly comply with the requirements of Juv.R. 29(D). This court recently considered the issue of a trial court's compliance with Juv.R. 29 in accepting admissions in *In re Christopher R.* (1995), 101 Ohio App.3d 245, 655 N.E.2d 280, and determined that the appropriate standard is substantial compliance.

Upon consideration of the entire record of proceedings in the trial court and as summarized above, this court finds that the trial court did substantially comply with the requirements of Juv.R. 29 when it accepted appellant's admission to the charges and, therefore, appellant's first assignment of error is not well taken.

The second potential assignment of error asserts that appellant received ineffective assistance of trial counsel because he "was committed to the custody of the Department of Youth Services after entering his 'admission.'"

■ The Supreme Court of Ohio has adopted a two-part test for determining whether a defendant has received ineffective assistance of counsel. The test requires evidence that (1) the representation of the defendant's trial counsel fell

below "an objective standard of reasonable representation"; and (2) the substandard representation resulted in prejudice to the complaining defendant. *State v. Bradley* (1989), 42 Ohio St.3d 136, 538 N.E.2d 373, paragraph two of the syllabus. In addition, "in Ohio a properly licensed attorney is presumably competent." *State v. Jackson* (1980), 64 Ohio St.2d 107, 110–111, 18 O.O.3d 348, 350–351, 413 N.E.2d 819, 822–823.

Upon consideration thereof, this court finds nothing in the record which would support a finding that the representation appellant received from his trial counsel fell below "an objective standard of reasonable representation." Accordingly, appellant's second assignment of error is found not well taken.

The third potential assignment of error asserts that the trial court abused its discretion by committing appellant "to the Department of Youth Services in violation of Juvenile Rule 35(B)."

R.C. 2151.355, which sets forth the power of a juvenile court to make dispositional orders concerning a juvenile who is found to be delinquent, states:

"(A) If a child is found by the court to be a delinquent child, the court may make any of the following orders of disposition:

" * * *

"(2) Place the child on probation under any conditions that the court prescribes. * * *

" * * *

"(4) If the child was adjudicated delinquent by reason of having committed an act that would be an aggravated felony of the third degree or a felony of the third or fourth degree if committed by an adult, commit the child to the legal custody of the department of youth services for institutionalization for an indefinite term consisting of a minimum period of six months and a maximum period not to exceed the child's attainment of the age of twenty-one years[.]"

Juv.R. 35(B) states:

"The court shall not revoke probation except after a hearing at which the child shall be present and apprised of the grounds on which revocation is proposed. The parties shall have the right to counsel and the right to appointed counsel * * *. Probation shall not be revoked except upon a finding that the child has violated a condition of probation of which the child had * * * been notified."

Unless the juvenile court exceeds the statutory sentencing guidelines or abuses its discretion, this court will not reverse the decision of the juvenile court on appeal. *In re Anthony M.* (Mar. 10, 1995), Lucas App. No. L–94–204, unreported, 1995 WL 96786. An abuse of discretion "connotes more than an

error of law or of judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." *State v. Adams* (1980), 62 Ohio St.2d 151, 157, 16 O.O.3d 169, 173, 404 N.E.2d 144, 148.

Upon consideration of the entire record of proceedings before the trial court and as summarized above, this court finds that the trial court did not act outside its statutory authority or in abuse of its discretion when it rescinded its prior stay and committed appellant to the Department of Youth Services "for a minimum period of six months to age 21." Accordingly, appellant's third assignment of error is found not well taken.

Upon our own independent review thereof, this court finds further that the record fails to reveal any arguable issues for appeal and that this appeal is wholly frivolous. The motion to withdraw filed by appellant's counsel is, therefore, granted and the decision of the Lucas County Court of Common Pleas, Juvenile Division, is hereby affirmed. Appellant is ordered to pay the court costs of this appeal.

*Judgment affirmed.*

GLASSER, J., concurs.

HANDWORK, J., dissents.

HANDWORK, Judge, dissenting.

I dissent from the decision of the majority in this case, because, for the reasons stated below, I believe that the record presented to this court does present arguable issues for appeal. Accordingly, I would follow the procedure outlined by the United States Supreme Court and would not rule on the merits in this case; rather, I would appoint new counsel to prepare an appellate brief on behalf of appellant. *McCoy v. Court of Appeals of Wisconsin, Dist. 1* (1988), 486 U.S. 429, 444, 108 S.Ct. 1895, 1905, 100 L.Ed.2d 440; *Penson v. Ohio* (1988), 488 U.S. 75, 84, 109 S.Ct. 346, 352, 102 L.Ed.2d 300, 311. See, also, *State v. Duncan* (1978), 57 Ohio App.2d 93, 93–94, 11 O.O.3d 83, 83–84, 385 N.E.2d 323, 323–324.

Briefly, I believe the majority goes astray at the outset, when it characterizes this appeal as solely relating to "a judgment of the Lucas County Court of Common Pleas, Juvenile Division, which ordered appellant to serve a previously stayed six-month commitment to the Department of Youth Services." The record reflects that this is actually an appeal from combined proceedings in the Lucas County Court of Common Pleas which related to a motion that appellant's probation be revoked because he violated his probation requirements, and to a

complaint alleging that appellant committed a violation of the safe school ordinance which rendered him a delinquent.

The proceedings resulted in two judgment entries filed on July 28, 1994. In one judgment entry, which the majority acknowledges in its initial statement, the court found that appellant "admitted that he left St. Anthony's Villa Residential SOT program without permission and stayed away without permission." As a result, the court revoked appellant's probation and imposed a commitment order after lifting a stay. In the second judgment entry, the court found that appellant "admitted that he broke out a window at the Villa and was chased by staff members at the Villa." As a result, the court entered a finding that appellant violated the safe school ordinance and adjudged him delinquent.

Clearly, then, two separate incidents and two separate proceedings existed. One charge was the basis of the motion to change disposition, *i.e.,* to revoke appellant's probation, and the other charge was the basis of an entirely new complaint for delinquency. Furthermore, the transcript in this case lists two case numbers, and the referee makes a statement that the hearing is being held as to both cases. Appellant's notice of appeal is "from the commitments imposed in the above-captioned case on the 28th of July 1994 and from all rulings of the Court on all motions and objections of the juvenile or counsel." Accordingly, our record encompasses an appeal from both judgments. The existence of the two separate proceedings and judgment entries is important, because we must be clear about the nature of the proceedings involved when the court accepted appellant's admission and entered its judgments before we can make any true evaluation of whether any arguable issues for appeal exist.

Close review of the transcript of the hearing shows that appellant's trial attorney states in the transcript that his client is willing to make an admission relating to a specific case number. The case number identified by appellant's trial attorney is the case number assigned to the separate charge for delinquency, not the case number assigned to the revocation of probation case. The trial attorney's identification regarding which case his client's admission related to is supported by the exchange between the referee and appellant. Appellant entered an admission to breaking a window and causing a chase, a violation of the safe school ordinance, the charge that related solely to the delinquency case. Finally, before the admission was made, appellant's counsel stated that his client wanted "to give up his rights and admit to the 94 case, *with the understanding that the motion to show cause will be dismissed.*" (Emphasis added.) These facts lead to the reasonable conclusion that the admission in this case was made to the delinquency charge, thereby triggering Juv.R. 29(D) requirements.

The majority acknowledges in its facts that the two separate cases were initiated, but it fails to be consistent in its characterization of what the nature of the proceedings truly were in the juvenile court. Instead, it creates confusion by initially characterizing this as an appeal relating solely to a revocation of probation proceeding, and then proceeds, under the first proposed assignment of error, to apply Juv.R. 29(D) to this case, a rule which relates only to acceptance of an admission in a delinquency case, not to a revocation of probation proceeding. See Juv.R. 35(B). While, as I have explained, I believe that the record does support a conclusion that the admission made in this case did relate to the delinquency case, I do not understand how the majority can begin its discussion by characterizing this as an appeal which relates solely to a revocation of probation order and then apply a standard that does not apply to revocation of probation. Neither can I understand, even accepting the majority's tacit acknowledgment that the admission was entered to the delinquency charge and not to the charge relating to a violation of probation, how the majority can conclude on the basis of the record in this case that there was substantial compliance with Juv.R. 29(D).

I believe that pursuant to the holding in *In re Christopher R., supra,* the requirements of Juv.R. 29(D) are met when (1) a juvenile's attorney makes a statement in the presence of the juvenile and the court indicating that the attorney has informed the juvenile of his specific constitutional rights, and that the juvenile understands his rights and understands the effect of the waiver of his rights, and (2) the court then makes inquiry to determine that the juvenile heard and understood what his attorney said, that the juvenile is voluntarily making the admission, and that the juvenile understands his rights and the effect of his admission. However, the transcript from this case shows that neither part of the above test was met in this case.

Appellant's attorney made an incomplete statement regarding the rights to which appellant was entitled. The exact statement was:

"I would like to state for the record I did talk with my client [appellant] this morning. He is aware that he has a right to a trial regarding the window incident. * * *

"And he does know potential penalties if he does admit to this offense. He knows his constitutional rights to a trial, to remain silent, that he's presumed innocent, that the prosecutor has to prove beyond a reasonable doubt, the right to call witnesses, etc."

I believe this statement is too brief and indefinite to show that appellant was aware of all of his constitutional rights.

Furthermore, even if the statement was sufficient to show that appellant was informed of all of his constitutional rights, there is nothing in the record to

support a finding that the second requirement, that the referee make inquiry to determine that appellant heard and understood what his attorney said, was met in this case. The transcript shows that the referee merely asked appellant (1) whether he understood that he was waiving his right to a trial; (2) whether he understood that he could be sent to the Department of Youth Services; and (3) whether anyone made promises to him as to what the court's disposition in the case would be if he entered an admission. The referee therefore had no basis to form a personal conclusion that appellant did understand all of his constitutional rights or the effect of his decision to waive all of those rights. Arguable issues clearly exist, therefore, regarding whether error occurred when the juvenile court accepted appellant's admission.

Finally, even though I believe the record does support the conclusion that the admission in this case related to a delinquency charge, I believe that counsel could make an argument that at the very least the record shows confusion regarding whether the proceedings were relating to the delinquency charge or the revocation of probation case. Appellant, through his counsel, made it clear that the admission related to the delinquency case, but the transcript shows that the court used the admission in the delinquency case to revoke appellant's probation despite separate charges being entered to support the motion for the revocation of appellant's probation. I believe that counsel could further plausibly argue that this confusion regarding the exact nature of the proceedings gives rise to arguable issues for appeal. I would not proceed to the merits of this case until an appellate brief discussing those issues was filed with this court by new counsel appointed to act on appellant's behalf.