OPINION
Appellant, Joshua Kash, appeals the order of the Warren County Juvenile Court committing him to the Department of Youth Services ("DYS"). We affirm the decision of the trial court.
Appellant was adjudicated a delinquent by the Warren County Juvenile Court on June 29, 1999 when he entered an admission to a delinquency charge based on a fifth degree felony of trafficking. Appellant was sentenced to house arrest with a suspended commitment to the Mary Haven Youth Center. On October 25, 1999, appellant was again charged with delinquency for a fourth degree felony of selling, offering to sell, or delivering a counterfeit controlled substance and a fifth degree felony charge of drug abuse. On December 14, 1999, appellant entered an admission to the counterfeit substance charge, and the drug abuse charge was dismissed. Appellant was given an opportunity to complete the residential treatment program at Mary Haven.
On May 17, 2000, appellant was charged with escape for leaving his placement at Mary Haven. The escape charge was a felony of the third degree. On May 19, 2000, appellant waived his right to an attorney and entered an admission to the charge of escape during the arraignment hearing. The court accepted his waiver and his admission. Appellant was brought before the court on June 29, 2000 for disposition. The court committed appellant to DYS for a minimum of six months and a maximum not to exceed his twenty-first birthday. However, the court suspended appellant's commitment to DYS and returned him to his placement at Mary Haven.
Appellant made a second attempt at escape. On August 4, 2000, appellant appeared on a second escape charge. On September 12, 2000, appellant entered a plea to that charge and was ordered to be assessed and placed in the Butler County Juvenile Rehabilitation Center, with the possibility of commitment to DYS if appellant was unsuccessful in the Butler County program. At the detention disposition, on October 5, 2000, appellant was warned again that he could be sent to DYS if he did not participate in the Butler County program.
On February 16, 2001, appellant appeared in court for failing to comply with the court order of September 12, 2000. The court order directed appellant to successfully complete the Butler County program. On March 20, 2001, appellant entered an admission to the violation of the court order. The court accepted the plea and entered an adjudication of delinquency. The magistrate ordered an evaluation by Warren County Mental Health before proceeding with the disposition.
At the dispositional hearing on April 5, 2001, appellant, his mother, and his father had the opportunity to speak freely. The magistrate informed appellant that he did not want to make a decision that day in order to review the report from Warren County Mental Health. On April 24, 2001, the court ordered that appellant's suspended sentence to DYS be revoked and that he be committed to a term of not less than six months, but not to exceed his twenty-first birthday. Appellant appeals the commitment to DYS raising five assignments of error.
Assignment of Error No. 1:
 THE TRIAL COURT VIOLATED [APPELLANT'S] RIGHT TO DUE PROCESS AS GUARANTEED BY THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION WHEN IT DENIED HIM THE RIGHT TO BE PRESENT AT EVERY STAGE OF THE PROCEEDINGS AGAINST HIM.
Appellant argues he was denied due process of the law when the trial court failed to ensure his presence at all stages of the proceedings against him. Appellant argues he was not at the hearing that revoked his suspended commitment and imposed a term of incarceration to DYS.
A reviewing court will not reverse the judgment of a juvenile court absent an abuse of discretion. In re William H. (1995),105 Ohio App.3d 761, 767. An abuse of discretion connotes more than an error of law or of judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable. Id. at 767-768.
From their inception, juvenile courts existed as civil, not criminal, courts. The basic therapeutic mission of these courts continues to this day. Therefore, the Supreme Court of Ohio has held that "a juvenile court proceeding is a civil action." In re Anderson (2001),92 Ohio St.3d 63, 67. There is no doubt that the Due Process Clause is applicable in juvenile proceedings. In re Gault (1967), 387 U.S. 1,13-14, 87 S.Ct. 1428, 1436-1437. However, the Supreme Court has recognized that the "acceptance of juvenile courts distinct from the adult criminal justice system assumes that juvenile offendersconstitutionally may be treated differently from adults." Bellotti v.Baird (1979), 443 U.S. 622, 635, 99 S.Ct. 3035, 3044. (Emphasis added.)
To establish a procedural due process violation, it must be shown that the conduct complained of deprived appellant of a liberty or property interest without adequate procedural safeguards. Bd. of Regents of StateColleges v. Roth (1972), 408 U.S. 564, 569, 92 S.Ct. 2701, 2705. Appellant was present for the adjudication hearing on March 20, 2001 when he was adjudicated delinquent. Appellant was also present at the dispositional hearing on April 5, 2001 at which the magistrate told appellant, "I'm not going to send you home to your mom or your dad. You are going to go someplace and it's my task to determine what the most appropriate place is that most clearly meets your needs. I'll take the issue of placement under advisement." The decision revoking appellant's suspended sentence to DYS was entered April 24, 2001.
Under Juv.R. 29, upon the determination of the issues, the court may, "enter an adjudication and continue the matter for disposition for not more than six months and may make appropriate temporary orders." Juv.R. 29(F)(2)(b). After the conclusion of the dispositional hearing, "the court shall enter an appropriate judgment within seven days." Juv.R. 34(C).
Although the trial court required nineteen days to deliver its decision, a "trial court's failure to meet the mandatory time requirement of Juv.R. 34(C) does not deprive it of jurisdiction to enter a final determination." In re Galloway (1991), 77 Ohio App.3d 61, 73. When a trial court enters a final decision outside the seven day time requirement, "reversal of the trial court's judgment is not the proper remedy." Id. Reversal is not the proper remedy because the failure to enter a final determination within seven days does "not result in a denial of appellant's right to due process of law." Id.
The decision revoking appellant's suspended DYS commitment was based upon the April 5, 2001 dispositional hearing. Appellant's due process rights were not violated because appellant was present for the April 5, 2001 hearing. Juv.R. 29 and Juv.R. 34 do not require appellant to be physically present for the entering of the decision. Furthermore, entering the decision nineteen days after the conclusion of the dispositional hearing resulted in no prejudice to appellant. Since appellant was already in detention, under R.C. 2151.355(F)(6), he will receive credit for the nineteen days he served while waiting for the decision to be entered. Consequently, the trial court did not act unreasonably, arbitrarily or unconscionably, and appellant's due process rights were not violated. Therefore, the first assignment of error is overruled.
Assignment of Error No. 2:
 THE TRIAL COURT COMMITTED PLAIN ERROR AND VIOLATED APPELANT'S RIGHTS AS GUARANTEED BY THE FIFTH, SIXTH
AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION, ARTICLE I, SECTION 10 OF THE OHIO CONSTITUTION, BY FAILING TO RECORD THE ENTIRE PROCEEDING PURSUANT TO JUV.R. 37.
Appellant argues there was a hearing on April 24, 2001 that was not recorded. Appellant argues failure to record a hearing pursuant to Juv.R. 37 necessitates the reversal of appellant's adjudication.
Juv.R. 37(A) states, "the juvenile court shall make a record of adjudicatory and dispositional proceedings in * * * delinquent cases." A record was made for the March 20, 2001 adjudicatory and the April 5, 2001 dispositional hearings. There was no hearing for the April 24, 2001 decision because that decision was rendered based upon April 5, 2001 dispositional hearing.
There was no proceeding that required recording on April 24, 2001. Since the adjudicatory and dispositional hearings were recorded as required under Juv.R. 37(A), appellant's rights have not been violated. Therefore, the second assignment of error is overruled.
Assignment of Error No. 3:
THE COURT DENIED APPELLANT'S RIGHT TO COUNSEL.
Appellant argues the trial court erred by not obtaining a waiver of counsel that was knowing, intelligent, and voluntary. Furthermore, appellant argues that the trial court failed to inform him that he had a right to an attorney at every stage of the proceedings against him in violation of Juv.R. 29.
Under R.C. 2151.352 and Juv.R. 4(A), a juvenile is entitled to representation by counsel at all stages of a delinquency proceeding. In most proceedings, with the permission of the court, a juvenile may waive the right to counsel. Juv.R. 3. However, before permitting a waiver of counsel, the court has a duty to make an inquiry to determine that the relinquishment is of "a fully known right" and is voluntary, knowingly, and intelligently made. In re Gault (1967), 387 U.S. 1, 42,87 S.Ct. 1428, 1451. A voluntary, knowing, and intelligent waiver of the right to counsel must affirmatively appear on the record. In re Montgomery
(1997), 117 Ohio App.3d 696, 700, appeal not allowed (1997),78 Ohio St.3d 1490. With these principles in mind, we turn our attention to the proceedings below.
At the February 16, 2001 arraignment hearing, the magistrate read the allegations of the complaint and asked appellant, "have you received a copy of this complaint." Appellant answered, "yes." Then the magistrate asked appellant, do "you understand what you're accused of." Appellant answered, "yes."
The magistrate told appellant, "you must understand that if you admit the charge, there would be no trial and without a trial, you would not get an opportunity to present any testimony and evidence in your own defense, or challenge any testimony or evidence against you." Appellant stated that he understood these rights.
The magistrate then advised appellant, "you have the right to question, cross-examine all persons who testify, and you have the rightto be represented by a lawyer at each hearing in court[1] * * * do you know what these lawyers do?" (Emphasis added.) Appellant replied, "they give me legal advice as to what I should do."
The magistrate then informed appellant of the consequences of the charges. Appellant was informed that the court could "levy fines and assess costs, that is to take money." The magistrate went on to tell appellant the court could order "counseling, treatment, * * * community service, * * * require restitution, * * * order probation, * * * orcommit appellant to DYS." (Emphasis added.) Appellant then requested an attorney for the proceeding. Appellant's mother then informed the magistrate that she would contact an attorney that afternoon.
At the beginning of the March 20, 2001 adjudication hearing, appellant stated, "I want to admit to the violation of the Court order that I've been charged with." The magistrate then asked, "are you prepared to go forward today without a lawyer?" Appellant answered, "yes." The magistrate asked a second time if appellant was sure he wanted to proceed without a lawyer and then asked appellant's mother if she had discussed this with him. Appellant and his mother both stated they had discussed the admission and appellant was prepared to proceed without a lawyer.
The record illustrates that Juv.R. 29 was not violated and that appellant's constitutional rights were not violated. Appellant knew the nature of the allegation and the consequences of his admission. Appellant was informed that he had a right to an attorney at every stage of the proceedings against him before he waived that right. Appellant's waiver of counsel was knowing, intelligent, and voluntary. Consequently, appellant's right to counsel was not denied. Therefore, the third assignment of error is overruled.
Assignment of Error No. 4:
 THE TRIAL COURT VIOLATED APPELLANT'S RIGHT TO NOTICE AND DUE PROCESS OF LAW AS GUARANTEED BY THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 16 OF THE OHIO CONSTUTUTION WHEN IT DID NOT FOLLOW THE PROPER PROCEDURES FOR PROBATION REVOCATION SET FOURTH IN JUV.R. 35.
Appellant argues the trial court violated his rights to notice and due process when it failed to follow proper procedures established under Juv.R. 35. Appellant argues he did not have a hearing where he was informed of the nature and grounds upon which revocation of his suspended DYS commitment was proposed. Appellant argues since there was no hearing there was no finding that appellant violated the court order.
Juv.R. 35(B) acknowledges a juvenile's due process rights and states in part, "[p]robation shall not be revoked except upon a finding that the child has violated a condition of probation of which the child had, pursuant to Juv.R. 34(C), been notified." Juv.R. 35(B) does not require the juvenile court to hold a separate hearing to determine whether the minor has violated his probation. In the Matter of John Hall (Apr. 1, 1991), Preble App. No. CA90-11-021, unreported, at 6. Furthermore, Juv.R. 35(B) does not imply that a juvenile must be informed that if probation is violated, the previous commitment could be reinstated. SeeIn re John Collins (Sept. 27, 1995), Medina App. No. 2364-M, unreported.
Upon review of the record, we are of the opinion that the juvenile court complied with Juv.R. 35(B). At the October 5, 2000 hearing, the magistrate specifically and directly notified appellant about the consequences of the allegations he faced. The magistrate stated, "please understand that if you are discharged from [the Butler County program] unsuccessful, that you'll go to DYS." Appellant stated he understood. The October 5, 2000 judgment entry states, "[s]aid suspension of commitment to Ohio [DYS] is suspended on condition of full compliance with all terms, rules and conditions of Butler County" program. Appellant was unsuccessful in completing the Butler County program.
On February 16, 2001, appellant was arraigned for not cooperating with the Butler County program. The magistrate asked appellant, "do you understand what you've been accused of?" Appellant stated, "I understand that I'm in here for violating a Court order, but I don't understand why." The magistrate then explained the charge to appellant and reiterated appellant's rights. The juvenile court was not required to remind appellant that his probation could be revoked as a result of his admission. In re Davis (Sept. 8, 1998), Clinton App. No. CA97-12-016, unreported, at 8. Yet, once again the magistrate reminded appellant, "you are on a suspended commitment to the Ohio [DYS] and because that commitment was based on a felony of the Third degree, you face a minimum commitment of six months at the Ohio [DYS], maximum term not to exceed your 21st birthday." Appellant then asked for an attorney. On March 20, 2001, at the adjudication hearing, appellant entered an admission that he was not participating in the Butler County program in violation of the court order. There was no need to specify in detail what appellant actually did or did not do in relation to the court order since appellant admitted to the violation. See In re Hansen (Jan. 30, 2002), Tuscarawas App. No. 2001AP070064, unreported.
It is evident that appellant was notified of the grounds for which his probation could be revoked. Since appellant received adequate notice, his due process rights were not violated. The suspended commitment to DYS was properly revoked. Therefore, the fourth assignment of error is overruled.
Assignment of Error No. 5:
 APPELLANT'S RIGHT NOT TO BE PUNISHED TWICE FOR THE SAME OFFENSE AS GUARANTEED BY THE DOUBLE JEOPARDY CLAUSE OF THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 10
OF THE OHIO CONSTITUTION WAS VIOLATED WHEN THE COURT IMPOSED A DYS COMMITMENT AFTER APPELLANT HAD SERVED A PERIOD OF INCARCERATION IN THE YOUTH DETENTION CENTER.
Appellant argues his commitment to DYS after being "sentenced to the Juvenile Detention Center is tantamount to Double Jeopardy and violates" appellant's rights. Double jeopardy protects individuals from three types of abuses by the criminal justice system: "(1) a second prosecution for the same offense after acquittal, (2) a second prosecution for the same offense after conviction, and (3) multiple punishments for the same offense." State v. Gustafson (1996), 76 Ohio St.3d 425, 432. Appellant's double jeopardy argument falls under the third scenario, which prohibits "multiple criminal punishments for the same offense."
The commitment to the DYS is a separate punishment for appellant's violation of the court order apart from the punishment appellant received for committing the offense of escape; therefore, we cannot conclude that the juvenile court violated appellant's rights under the Double Jeopardy Clause. See In re Kelly (Nov. 7, 1995), Franklin App. No. 95APF05-613, unreported, at 11-12. The fifth assignment of error is overruled.
Judgment affirmed.
WALSH, P.J., and VALEN, J., concur.
[1] Although R.C. 2151.352 states that a juvenile has a right to counsel "at all stages of the proceedings," it does not state that the court must advise appellant of his right at all stages of the proceedings once appellant has waived the right. In fact, only Juv.R. 29(B)(3) addresses when a court must advise the juvenile of the right, and states that the juvenile must be advised of the right before the adjudicatory hearing. In re Griffin (Sept. 27, 1996), Union App. No. 14-96-14, unreported.