[This decision has been published in *Ohio Official Reports* at 92 Ohio St.3d 63.]

IN RE ANDERSON.

[Cite as *In re Anderson*, 2001-Ohio-131.]

*Juvenile court—Delinquency proceedings—Juvenile court proceeding is a civil action.*

(No. 00-906—Submitted February 27, 2001—Decided June 13, 2001.)

APPEAL from the Court of Appeals for Clark County, Nos. 99-CA-90 and 99-CA-91.

_____

SYLLABUS OF THE COURT

A juvenile court proceeding is a civil action.

_____

FRANCIS E. SWEENEY, SR., J.

{¶ 1} In August and September 1997, two complaints were filed in the Clark County Juvenile Court against appellant, Charles M. Anderson. The complaints alleged that appellant was delinquent by reason of having committed rape, R.C. 2907.02, a first-degree felony, and gross sexual imposition, R.C. 2907.05, a third-degree felony. The rape charge was later amended to gross sexual imposition.

{¶ 2} Appellant admitted both charges. On December 17, 1997, the juvenile court adjudicated appellant a delinquent and ordered him committed to the Ohio Department of Youth Services ("DYS") for a minimum term of six months on each charge. The commitment was then suspended, and appellant was placed on indefinite probation and ordered to complete a sex offender program.

{¶ 3} Appellant appeared before the juvenile court for a review hearing on February 3, 1998. The next day, the court imposed the previously suspended commitment and ordered that appellant's best interests required that he be

committed to DYS for a minimum of six months on each charge, to be served consecutively.

{¶ 4} On December 9, 1999, appellant filed two notices of appeal with the Second District Court of Appeals. Appellant argued that his appeals had been timely filed pursuant to App.R. 4(A), because the clerk of courts failed to serve him with a copy of the judgment entry as required by Civ.R. 58(B).

{¶ 5} On April 3, 2000, the court of appeals held that neither App.R. 4(A) nor Civ.R. 58(B) permits a delayed appeal or tolling of the notice of appeal filing period for juvenile cases. Thus, the court dismissed both appeals for lack of jurisdiction. The cause is now before this court upon the allowance of a discretionary appeal.

{¶ 6} In reaching its holding, the court of appeals determined that juvenile cases are neither criminal nor civil. Appellant believes that this holding is erroneous and presents two alternative arguments for our consideration: (1) juvenile proceedings are criminal and pursuant to App.R. 5(A), he has the right to file a delayed appeal; or in the alternative, (2) juvenile proceedings are civil and pursuant to App.R. 4(A) and Civ.R. 58(B), his appeal was timely filed. For the reasons that follow, we adopt appellant's second argument and hold that a juvenile court proceeding is a civil action. Therefore, pursuant to App.R. 4(A) and Civ.R. 58(B), we find that appellant's appeal was timely filed.

{¶ 7} We have long held that juvenile court proceedings are civil, rather than criminal, in nature. See *Cope v. Campbell* (1964), 175 Ohio St. 475, 26 O.O.2d 88, 196 N.E.2d 457, paragraph one of the syllabus, overruled on other grounds in *In re Agler* (1969), 19 Ohio St.2d 70, 48 O.O.2d 85, 249 N.E.2d 808. See, also, *Agler* at 74, 48 O.O.2d at 87, 249 N.E.2d at 811. To understand why this is so, it is helpful to consider the history of the juvenile justice system.[1]

---

1. See, also, *State v. Hanning* (2000), 89 Ohio St.3d 86, 88-89, 728 N.E.2d 1059, 1061-1062.

**{¶ 8}** The first juvenile court was established in Illinois in 1899. D'Ambra, A Legal Response to Juvenile Crime: Why Waiver of Juvenile Offenders is Not a Panacea (1997), 2 Roger Williams U.L.Rev. 277, 280. The early reformers were appalled by the treatment of youth in criminal courts, and they sought to put in place a separate system where the overriding concerns were the protection and rehabilitation of the child. *Id.* It was a benevolent system based on the best interests of the child, where child welfare and individual assessment and treatment were the goals. *Id.* The formation of this system was premised on the legal doctrine of *parens patriae, i.e.,* the state, as parent, had the duty to care for and guide these children with rehabilitation as the ultimate goal. Bell, Ohio Gets Tough on Juvenile Crime: An Analysis of Ohio's 1996 Amendments Concerning the Bindover of Violent Juvenile Offenders to the Adult System and Related Legislation (1997), 66 U.Cin.L.Rev. 207, 209.

**{¶ 9}** The juvenile court movement reformers "designed an institution that departed from the traditional criminal court of law in almost every respect." Rossum, Holding Juveniles Accountable: Reforming America's "Juvenile Injustice System" (1995), 22 Pepperdine L.Rev. 907, 911. Because reformers "assumed that the interests of the state, delinquent children, and their families were identical, they eliminated the adversarial atmosphere of criminal courts." *Id.* "They replaced the cold, objective standards of criminal procedures with informal procedures." *Id.* A specialized vocabulary was developed. "Criminal complaints" gave way to "delinquency petitions." Instead of "trials," "hearings" were held. Juveniles were not given "sentences"; they received "dispositions." Juveniles were not "found guilty"; they were "adjudicated delinquent." *Id.* at 912.

**{¶ 10}** Other differences included excluding the public from juvenile hearings to protect children from the public stigma of criminal prosecution and giving judges broad discretion to adjudicate delinquency and to set dispositions. *Id.* Again, "[t]he principle underlying [this] system was to combine flexible decision-

making with individualized intervention to treat and rehabilitate offenders rather than to punish offenses." *Id.*

{¶ 11} Although the juvenile court operates in a separate system, the United States Supreme Court has carefully imposed basic due process requirements on it. We recognize that there are criminal aspects to juvenile court proceedings. For instance, in *In re Gault* (1967), 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527, the court specifically held the privilege against self-incrimination applicable to juvenile proceedings. *Id.* at 49-54, 87 S.Ct. at 1455-1458, 18 L.Ed.2d at 558-561. In addition, notice of the charges, the assistance of counsel, and the rights of confrontation and cross-examination were also afforded to the juvenile. *Id.* at 31-57, 87 S.Ct. at 1445-1459, 18 L.Ed.2d at 548-563. In *In re Winship* (1970), 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368, the court further advanced due process rights when it found that the state must prove its case against a juvenile beyond a reasonable doubt. However, in *McKeiver v. Pennsylvania* (1971), 403 U.S. 528, 91 S.Ct. 1976, 29 L.Ed.2d 647, and *Schall v. Martin* (1984), 467 U.S. 253, 104 S.Ct. 2403, 81 L.Ed.2d 207, the court declined further expansions when it denied juveniles the right to jury trials (*McKeiver*) and upheld the constitutionality of pretrial preventive detention for accused juvenile delinquents (*Schall*).

{¶ 12} In all these cases, the court attempted to "strike a balance—to respect the 'informality' and 'flexibility' that characterize juvenile proceedings * * * and yet to ensure that such proceedings comport with the 'fundamental fairness' demanded by the Due Process Clause." *Id.* at 263, 104 S.Ct. at 2409, 81 L.Ed.2d at 216. In *Schall*, the court reiterated that "[t]here is no doubt that the Due Process Clause is applicable in juvenile proceedings," yet reaffirmed that "[t]he state has 'a *parens patriae* interest in preserving and promoting the welfare of the child,' * * * which makes a juvenile proceeding fundamentally different from an adult criminal trial." *Id.* at 263, 104 S.Ct. at 2409, 81 L.Ed.2d at 216.

{¶ 13} In *In re Caldwell* (1996), 76 Ohio St.3d 156, 157, 666 N.E.2d 1367, 1368, we summarized the purpose of R.C. 2151.01: "to provide for the care, protection, and mental and physical development of children, to protect the public from the wrongful acts committed by juvenile delinquents, and to rehabilitate errant children and bring them back to productive citizenship, or, as the statute states, to supervise, care for and rehabilitate those children. Punishment is not the goal of the juvenile system, except as necessary to direct the child toward the goal of rehabilitation."[2]  See, also, Juv.R. 1(B)(3) and (4).

{¶ 14} Thus, from their inception, juvenile courts existed as civil, not criminal, courts.  The basic therapeutic mission of these courts continues to this day.  Therefore, we hold that a juvenile court proceeding is a civil action.  Applying our holding to the facts of this case, we find that the Civil Rules and the Appellate Rules pertaining to the filing of a civil notice of appeal apply to appeals from the juvenile court.

{¶ 15} For civil cases, App.R. 4(A) requires the notice of appeal to be filed within thirty days of "the later of entry of the judgment or order appealed or, in a civil case, service of the notice of judgment and its entry if service is not made on the party within the three day period in [Civ.R.] 58(B)."  App.R. 4(A) thus contains

---

2. Although not controlling in this case, Am.Sub.S.B. No. 179, signed into law January 5, 2001, and effective January 1, 2002, makes many substantive changes to the Juvenile Code.  Appellant argues that many of these provisions are punitive in nature and that they reflect the deepening trend toward criminalizing juvenile adjudications.  For instance, in some situations, if a child is adjudicated a "serious youthful offender" as defined in R.C. 2152.02(X), the court is required to impose a blended sentence consisting of two parts. R.C. 2152.13(E)(1).  The first part to be served is a traditional juvenile disposition and the second is a sort of provisional adult sentence.  Under certain circumstances, such as serious misconduct by the juvenile while in custody, the adult sentence can be imposed. R.C. 2152.14(A).  However, because this law is not yet in effect, we leave for another day the question of whether provisions such as these convert some juvenile proceedings into criminal actions.  Yet, we do note that Am.Sub.S.B. No. 179 maintains the basic philosophy of the juvenile system, *i.e.,* that juveniles are not criminals.  The new law still attempts to treat or dispose of youthful offenders in the juvenile system.  The overriding purposes for dispositions under new R.C. Chapter 2152 are "to provide for the care, protection, and mental and physical development of children * * *, protect the public interest and safety, hold the offender accountable for the offender's actions, restore the victim, and rehabilitate the offender."  R.C. 2152.01(A).

a tolling provision that applies in civil matters when a judgment has not been properly served on a party according to Civ.R. 58(B). Civ.R. 58(B) requires the court to endorse on its judgment "a direction to the clerk to serve upon all parties * * * notice of the judgment and its date of entry upon the journal." The clerk must then serve the parties within three days of entering judgment upon the journal. "The thirty-day time limit for filing the notice of appeal does not begin to run until the later of (1) entry of the judgment or order appealed if the notice mandated by Civ.R. 58(B) is served within three days of the entry of the judgment; or (2) service of the notice of judgment and its date of entry if service is not made on the party within the three-day period in Civ.R. 58(B)." *Whitehall ex rel. Fennessy v. Bambi Motel, Inc.* (1998), 131 Ohio App.3d 734, 741, 723 N.E.2d 633, 638.

{¶ 16} Here, the trial court never endorsed upon the judgment entry the required "direction to the clerk to serve upon all the parties * * * notice of the judgment and its date of entry upon the journal" pursuant to Civ.R. 58(B). Moreover, the juvenile court's docket contains no indication that appellant was ever served with notice. Therefore, the time for filing a notice of appeal never began to run because the trial court failed to comply with Civ.R. 58(B). Therefore, appellant's appeal in this case was timely filed under App.R. 4(A).

{¶ 17} The judgment of the court of appeals is reversed, and the cause is remanded to that court for consideration of appellant's appeal.

*Judgment reversed*

*and cause remanded.*

MOYER, C.J., DOUGLAS, RESNICK, PFEIFER and LUNDBERG STRATTON, JJ., concur.

COOK, J., dissents.

_____

**COOK, J., dissenting.**

**{¶ 18}** Because this court has previously deemed juvenile proceedings to be "civil in nature," the majority decides that a juvenile court proceeding is a "civil action." From this, the majority reasons that because App.R. 4(A)'s tolling provision applies by its terms to appeals "in a civil case," Anderson's time to file his appeal should have been tolled under that rule pending compliance with Civ.R. 58(B). Superficially, the majority's approach seems sound.

**{¶ 19}** Upon closer examination, however, it is apparent that App.R. 4 recognizes a *distinction* between a "civil case" and a "juvenile proceeding," and that the tolling provision in division (A) of that rule applies to civil cases, but not to juvenile proceedings. For evidence supporting this proposition, one need look no further than division (B) of the very same rule. App.R. 4(B) enumerates several exceptions to the general thirty-day rule embodied in division (A). Division (B)(2) provides that "[i]n a civil case *or* juvenile proceeding" (emphasis added), the time for filing a notice of appeal will be tolled pending disposition of certain motions. If juvenile proceedings are simply "civil cases," as today's majority decides, the words "or juvenile proceeding" contained in division (B) are rendered mere surplusage.

**{¶ 20}** When this court promulgated App.R. 4, it used specific language to embrace *both* civil cases *and* juvenile proceedings within division (B)'s enumerated exceptions to division (A)'s thirty-day rule. The same is not true, however, for the tolling provision in division (A), which applies only to civil cases. I agree, therefore, with the court of appeals that the tolling provision in App.R. 4(A) does not apply to Anderson's appeal from juvenile court, and that the court of appeals thus lacked jurisdiction to entertain Anderson's untimely appeal. Given this, I must respectfully dissent from the majority's decision and would reach the merits of the constitutional arguments raised in Anderson's first and second propositions of law.[3]

---

3. In his first proposition of law, Anderson claims that "[a] juvenile's right to due process is violated when the state denies the juvenile the right to request a delayed appeal but provides delayed appeals

_____

*Stephen A. Schumaker*, Clark County Prosecuting Attorney, and *Andrew P. Pickering*, Assistant Prosecuting Attorney, for appellee.

*David H. Bodiker,* Ohio Public Defender, and *Thomas Kenneth Lee,* Assistant Public Defender, for appellant.

_____

to adults with criminal convictions." In his second proposition of law, Anderson submits that "[a] juvenile's right to equal protection is violated when the state denies the juvenile a right to request a delayed appeal, even though the state provides delayed appeals to adults with criminal convictions."