This appeal is brought by the minor child, Joseph Callahan, from the judgment of the Court of Common Pleas, Marion County, Juvenile Division adjudicating him delinquent and revoking a previously suspended commitment to the Ohio Department of Youth Services.
Joseph Callahan (Joseph), age 14, was released from institutionalization on January 17, 2001 by the Ohio Department of Youth Services (ODYS) subject to certain conditions including, but not limited to, regular attendance at school. On March 19, 2001 the Marion County Juvenile Prosecutor filed a complaint against Joseph alleging two counts of violating a prior court order for leaving home without permission and for refusing to go to school. Another complaint was filed the same day by Kathleen Murray, Joseph's mother, charging Joseph with one count of Domestic Violence.
On March 23, 2001 Joseph appeared in the Marion County Juvenile court for hearing before a Magistrate. The prosecutor presented three witnesses at the hearing. Joseph's mother, Kathleen Murray, testified as to the domestic violence charge while Rick Abbot, the principal of Hardin High School, Wayne Douglas Burchett, an administrator of the smart school program, and Tom Walker, a juvenile parole officer, each testified that Joseph had defied the previous court order by failing to attend school on a regular basis.
Based on the testimony of these individuals, the Magistrate found Joseph to be in violation of his parole. In addition, the Magistrate adjudicated him delinquent for domestic violence. Joseph did not appeal the Magistrate's decision and in two separate judgment entries the trial court adopted the decision of the Magistrate. As a result, Joseph was committed to ODYS for the remainder of his previously suspended sentence and for an additional minimum of six months for Domestic Violence. It is from this order that Joseph appeals.
Appellant raises the following assignments of error:
 I.The trial court violated Joseph Callahan's right to Due Process under the Fifth and Fourteenth Amendments to the United States Constitution, Article I, Section 16 of the Ohio Constitution, and Juv.R. 29(E)(4) when it adjudicated delinquent of domestic violence absent proof of every element of the charge against him by sufficient, competent, and credible evidence.
 II. The trial court violated Joseph Callahan's right to notice and due process of law as guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution and Article I, Section 16 of the Ohio Constitution when it did not follow the proper procedure for probation revocation.
 As an initial matter we note that the Appellant presents two assignments of error alleging constitutional violations despite the fact that he did not raise said issues before the trial court. "Even where waiver is clear, this court reserves the right to consider constitutional challenges to the application of statutes in specific cases of plain error or where the rights and interests involved may warrant it." In re M.D. (1988), 38 Ohio St.3d 149. Thus, we exercise our discretionary authority to consider these issues despite the Appellant's failure to raise them below.
In his first assignment of error Joseph asserts that the prosecution failed to present legally sufficient evidence at trial to support a conviction for domestic violence thereby denying his right to due process. Specifically, Joseph alleges that the prosecution failed to prove that he knowingly caused or attempted to cause his mother physical harm.
R.C. 2919.25 states:
 (A) No person shall knowingly cause or attempt to cause physical harm to a family or household member.
 (B) No person shall recklessly cause serious physical harm to a family or household member.
 (C) No person, by threat of force, shall knowingly cause a family or household member to believe that the offender will cause imminent physical harm to the family or household member.
 In addition, R.C. 2901.22 (B) states that a person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. Therefore, the issue before the trial court was whether or not Joseph knew that by putting his mother into the chair that he would cause her serious physical harm or cause her to believe physical harm was imminent.
The facts surrounding the March 12, 2001 altercation between Joseph and his mother, Kathleen, are in dispute. Kathleen testified that on the day in question she attempted to pick Joseph up at school only to find that he was truant. Kathleen went on to testify that after she found Joseph hanging out on the street with friends, she took him home and:
 "[P]roceeded to jump his butt about the fact that he wasn't going to school and hanging around with these kids that I asked him not to and me and him got into a big old argument and he started yelling and screaming and being really violent."
 Kathleen's testimony goes on to reveal that her then live-in fiancé, identified only as Jamie, grabbed Joseph, threw him on to the ground, and the two began to "scuffle". According to Kathleen her fiancé was angry because Joseph failed to demonstrate the proper amount of respect towards his mother. At some point Joey stopped fighting with Jamie and redirected his anger at his mother. Kathleen testified to the following version of events:
 Kathleen: "Well, then he come up out of the living room, I mean up out of the hallway and into the living room where I was and he started yelling and screaming at me, calling me filthy names and I smacked him, open handedly across the face. And he grabbed a hold of me and he threw me down in the chair and he was holding me by my wrist . . . and he was sinking his nails into me and made my arm bleed."
Q: O.k. And what about your chest?
 Kathleen: I was trying to struggle to try to get away from him and he kept holding me in the chair and every time I tried to get up he'd push me back down. Well, then he took his knee and he put it up on my chest and was holding me there so I couldn't get up. I started to panic because I can't handle being confined and I finally managed to get him off me and I proceeded to go towards my bedroom. The last thing I remember is hitting the floor.
 Kathleen said that after she fainted, she was taken to the hospital and treated for bruised ribs.
Joseph testified to a somewhat different version of events. Joseph admitted to skipping school and to being with friends his mother didn't like. He admitted to yelling at his mother and explained that he was angry that she allowed her fiancé to assault him. Joseph stated:
 ". . . I was trying to walk past her and she smacked me about two times in my face and I told her not to hit me and she smacked again and I grabbed her by both of her arms, cupped my hands around her wrists and there was a chair there and I put her down on the chair and held her like that and she just kept yelling at me, I was like, calm down, chill out, I was like stop hitting me, you know, I was trying to get her to calm down."
 There are other discrepancies between Joseph and Kathleen's testimony. Joseph claims that Kathleen was angry at him not only for skipping school, but for telling her fiancé that she was having an affair with another man. Joseph testified that he never shoved his knees into his mother's ribs and that his only purpose was to calm his mother down. Finally, Joseph testified that after he left the living room his mother did not faint, but continued to argue with her fiancé. According to Joseph, it was much later upon returning home from taking his dad to work that he found his mother lying unconscious on the floor.
The police were not called to the scene and the ex-fiancé did not appear at the hearing. In fact, neither the state nor the defense presented evidence to corroborate or refute either version of events one way or the other. The testimony amounted to a classic "he said-she said" conflict, one that the trier of fact ultimately decided in Kathleen's favor. Joseph challenges the Magistrate's determination based on a sufficiency of the evidence argument. This challenge is untenable.
Under the both the United States and Ohio Constitutions juveniles are afforded the same rights to due process as those afforded to adults. Of these rights is the right to the assumption of innocence until proven beyond a reasonable doubt. See In re Gault (1967), 387 U.S. 1, In reAnderson (2001), 92 Ohio St.3d 63. It is axiomatic that the state must prove each and every element of an offense beyond a reasonable doubt.State v. Jones (2001), 91 Ohio St.3d 335, 347. Sufficiency of the proof, or evidence, is a test of adequacy. Whether the evidence is legally sufficient to sustain a verdict is a question of law. State v.Thompkins (1997), 78 Ohio St.3d 380 (citing State v. Robinson (1955),162 Ohio St. 486). A conviction based on legally insufficient evidence constitutes a denial of due process. Id (citing Tibbs v. Florida
(1982), 457 U.S. 31, 45).
When reviewing the sufficiency of the evidence to support a criminal conviction an appellate court must view the evidence in the light most favorable to the prosecution and inquire as to whether any reasonable trier of fact could have found the essential elements of the crime.State v. Jenks (1991), 61 Ohio St.3d 259, 273. A question of legal sufficiency is not the same inquiry as manifest weight, which allows the appellate court to sit as a "thirteenth juror." Thompkins,78 Ohio St.3d 380 at 387. In an examination of legal sufficiency of the evidence, it is not the function of an appellate court to substitute its judgment for that of the fact finder. Jenks, 61 Ohio St.3d 259 at 279.
In the case sub judice, the only evidence presented by the prosecution was Kathleen Murray's testimony, and, if believed, that testimony clearly establishes the requisite elements for domestic violence. Kathleen testified that Joseph caused her bodily harm by holding her in a chair, digging his nails into her arm, and shoving his knee into her chest. In our review of the sufficiency of the evidence it does not matter that another listener might doubt the veracity of Kathleen Murray's testimony. It only matters that if believed to be true, her testimony establishes that Joseph knowingly caused her bodily harm.
In his second assignment of error Joseph alleges that his constitutional right to procedural due process was violated when the state failed to show that he was given notice of the terms of his parole.
Procedural due process is a guarantee of fair procedure and affords an affected individual the right to some form of hearing, with notice and an opportunity to be heard before that individual is divested of a protected interest. Cleveland Bd. of Edn. v. Loudermill (1985), 470 U.S. 532, 542. The requirements of procedural due process are "flexible" and call for such procedural protections "as the particular situation demands."Mathews v. Eldridge (1976), 424 U.S. 319, 334; State v. Hamilton (1996),75 Ohio St.3d 636, 639.
Here, the Appellant asserts that his right to fair notice was violated since the prosecution did not enter documents in to evidence that would tend to show that he was notified of the terms of his parole. What is problematic here is that Joseph, through counsel, doesn't claim lack ofnotice, but rather lack of proof of notice. This argument attempts to create the presumption of lack of notice, or the presumption of a constitutional violation, until proven otherwise. Not surprisingly, the Appellant's brief fails to cite any authority for this proposition. Such a presumption does not exist in Ohio or federal law.
In any event, the record reflects that Joseph signed a document on January 17, 2001 indicating that he knew the terms of this release and the consequences of violating those terms. We recognize that while this document doesn't specifically state each term of the early release, it certainly indicates that Joseph was given some semblance of instruction as to what he could or could not do. It is well settled law that a court can take notice of the prior proceedings in a case, which would include the aforementioned document, signed on January 17, 2001. SeeDiversified Mortgage Investors Inc. v. Athens County Board of Revision
(1982), 7 Ohio App.3d 157, 159. Therefore, it is perfectly reasonable to assume that the trial court took notice of the document, signed by Joseph, and concluded that Joseph knew the terms of his release when he violated them. Accordingly, Joseph's second assignment of error is not well taken.
For the reasons stated above it is the ORDER of this Court that the judgment of the Court of Court of Common Pleas, Marion County, Juvenile Division is AFFIRMED.
Judgment affirmed.
SHAW and HADLEY, JJ., concur.