DECISION
Raquel Delgado was born July 12, 1982. Less than a month before her 18th birthday she was charged with possessing over two hundred fifty grams of heroin, a felony of the first degree if committed as an adult.
On August 22, 2000, Ms. Delgado admitted the allegations in the complaint charging her. The Cuyahoga County Juvenile Court committed her to the Ohio Department of Youth Services ("ODYS") for a term of at least one year. By law, she cannot remain in the custody of ODYS past her 21st birthday — July 12, 2003. The judge who committed Ms. Delgado to ODYS ordered that she be held by ODYS until her 21st
birthday.
On December 20, 2001, the Ohio Public Defender filed a mandamus action in this court because Ms. Delgado remained in the custody of ODYS after the minimum term of one year had elapsed. The mandamus action alleged that Ms. Delgado was being held due to the juvenile judge's expressed order that she be held for the maximum term allowed by law.
In accord with Loc.R. 12(M), the case was referred to a magistrate of this court to conduct appropriate proceedings. The magistrate conducted a conference with counsel for the parties and then issued a magistrate's order which includes a direction to the office of the Ohio Public Defender to show cause why the case should not be dismissed. Specifically, the magistrate ordered the parties to address the question of whether a mandamus action was the appropriate remedy for Ms. Delgado's claim.
The parties filed written memoranda. The magistrate then issued a magistrate's decision which includes a recommendation that the mandamus action be dismissed. (Attached as Appendix A.)
Counsel for Ms. Delgado has filed objections to the magistrate's decision. Counsel for Rufus Thomas, who is chair of the Release Authority of ODYS, has filed a memorandum in response. The case is now before the court for a full, independent review.
The magistrate recommended dismissal of this action in mandamus on the theory that Ms. Delgado has a plain and adequate remedy in the ordinary course of law, namely a direct appeal of the juvenile court's order committing her to ODYS. We agree in principle that direct appeal is an adequate and, in fact, the preferred remedy.
Counsel for Ms. Delgado argues that she is not really attacking the juvenile court's judgment. Instead, she is attacking the failure of ODYS to disregard the judge's order and to conduct a release review before her 21st birthday.
Under the facts of this case, we find no basis to compel ODYS to conduct such a review. The trial judge's order apparently was entered as a result of a plea bargain. The state of Ohio agreed to withdraw its motion to bind Ms. Delgado over to adult court in return for Ms. Delgado receiving a maximum juvenile sentence of less than three years. As a result of this agreement, Ms. Delgado is confined in a juvenile facility, not an adult prison. She has no adult criminal record. She reduced her maximum potential period of incarceration substantially. She also avoided any potential extradition to another state while she is in the care of ODYS.
Under the circumstances, she has no clear legal right to a release review which would be a vain act. If she is now somehow dissatisfied with the significant benefits she received as a result of the plea bargain, she should ask to set aside the admission she entered in juvenile court and once again face the risk of being incarcerated in an adult prison for as long as ten years. Her remedy at law is such a motion since she has not pursued a direct appeal.
We agree with the magistrate that the complaint in mandamus on behalf of Ms. Delgado does not state a claim upon which relief can be granted by this court. We, therefore, adopt the findings of fact and conclusions of law contained in the magistrate's decision and order that this action in mandamus be dismissed.
Objections overruled; case dismissed.
DESHLER and BRYANT, JJ., concur.
 APPENDIX A IN MANDAMUS ON ORDER TO SHOW CAUSE
In this original action, relator, Raquel Delgado, requests a writ of mandamus ordering respondent Rufus Thomas, Chairman, Release Authority, Ohio Department of Youth Services ("ODYS") to comply with R.C. 5139.50, 5139.51, 5139.04, 5139.13 and Ohio Adm. Code 5139-68-03, with respect to the judgment of the Cuyahoga County Common Pleas Court, Juvenile Court Division ("juvenile court") committing relator to the custody of ODYS for institutionalization in a secure facility pursuant to the juvenile court's delinquency finding.
Findings of Fact:
1. According to the complaint, relator is presently detained at ODYS's Riverview Juvenile Correctional Facility located in Delaware County, Ohio. According to the complaint, respondent Rufus Thomas is the Chairman of the Release Authority of ODYS.
2. The complaint's caption indicates that the office address of respondent is in Columbus, Ohio. Although the complaint fails to plead the territorial jurisdiction of this court, presumably, relator filed this action in the Franklin County Court of Appeals because respondent's office is located in Franklin County, Ohio.
3. According to the instant complaint, on June 15, 2000, a complaint was filed in the juvenile court alleging that on May 31, 2000, relator, then age seventeen, knowingly obtained, possessed or used heroin, a schedule I substance in violation of R.C. 2925.11, and the amount was over 250 grams, a felony of the first degree if committed by an adult.
3. On August 22, 2000, relator admitted to the allegations of the complaint. For disposition, the juvenile court found relator to be a delinquent child and committed her to the custody of ODYS for institutionalization:
 * * * [F]or a definite term consisting of a minimum period of one (1) year and a maximum period not to exceed the child's attainment of the age of twenty-one (21) years. This Court further orders that the child is not to be released from ODYS until she has attained the age of 21, and further that she is not to be transferred outside of the State of Ohio for commitment or other purposes without notification to and approval by this Court.
4. Relying upon R.C. 2151.355, relator alleges in her complaint that the juvenile court was without jurisdiction and authority to order that relator not be released from ODYS institutionalization until she attains the age of twenty-one years and that the juvenile court only had authority to order institutionalization for an indefinite term consisting of a minimum term of one year and a maximum period not to exceed the child's attainment of age twenty-one.
5. According to the instant complaint, that portion of the juvenile court's judgment that commits relator to ODYS for institutionalization for a definite term and that specifies that relator shall not be released from ODYS institutionalization until she reaches the age of twenty-one is "legally insufficient."
6. According to the complaint, respondent has established a "presumptive release date" for relator of July 12, 2003, which is the date of relator's twenty-first birthday. According to the complaint, the July 12, 2003 presumptive release date will in effect impose thirty-five months of institutionalization upon relator.
7. According to the complaint, respondent premised the presumptive release date of July 12, 2003, upon that portion of the juvenile court's judgment ordering that relator not be released from institutionalization until relator reaches the age of twenty-one years.
8. According to the complaint, respondent usually uses a "Release Matrix" to determine the presumptive release date of a child committed to the custody of ODYS. According to the complaint, respondent failed to abide by its Release Matrix in establishing the presumptive release date but instead relied entirely upon that portion of the juvenile court's judgment ordering that relator not be released from institutionalization until she reaches the age of twenty-one years.
9. According to the complaint, the Ohio Administrative Code requires respondent to conduct periodic reviews of a child's presumptive release date, but in relator's case, respondent does not intend to do so except for a review scheduled for forty-five days prior to her attainment of her twenty-first birthday.
10. According to the complaint, respondent has a duty to act in accordance with R.C. 5139.50, 5139.51, 5139.04, 5139.13, and Ohio Adm. Code 5139-68-03. According to the complaint, respondent has failed to comply with those statutory and code provisions.
11. On January 22, 2002, respondent filed his answer to the complaint. In his answer, respondent pleads inter alia, that the petition fails to state a claim upon which relief in mandamus can be granted.
12. On February 13, 2002, the magistrate held a telephone conference with counsel for relator and respondent. On February 14, 2002, the magistrate issued an order summarizing the discussions of the conference. The February 14, 2002 magistrate's order also provided:
 * * * [N]o later than February 22, 2002, relator shall show cause in writing why this action should not be dismissed on grounds that the action is barred by a plain and adequate remedy at law. That is, relator shall show cause why this action should not be dismissed for the failure of the complaint to state a claim upon which relief in mandamus can be granted.
13. On February 22, 2002, relator filed a memorandum captioned "Relator's Response to Magistrate's Order to Show Cause Why this Action Should Not Be Dismissed."
14. On March 4, 2002, respondent, pursuant to the magistrate's order, filed his "Memorandum in Opposition to Petitioner's Response to Show Cause Order."
15. On March 6, 2002, relator filed a reply memorandum.
16. This action is now before the magistrate for his determination of the matter raised in his February 14, 2002 order that relator show cause why this action should not be dismissed for the failure of the complaint to state a claim upon which relief in mandamus can be granted.
Conclusions of Law:
It is the magistrate's decision that this court dismiss this action for the failure of the complaint to state a claim upon which relief in mandamus can be granted.
The matter at hand is akin to a Civ.R. 12(B)(6) motion to dismiss which tests the sufficiency of the complaint. See State ex rel. Boggs v. Springfield Local School Dist. Bd. of Edn. (1995), 72 Ohio St.3d 94. In reviewing the complaint, this court must take all the material allegations as admitted and construe all reasonable inferences in favor of relator. Id.
In order for a court to dismiss a complaint for failure to state a claim upon which relief can be granted, it must appear beyond doubt from the complaint that the plaintiff/relator can prove no set of facts entitling him/her to recovery. O'Brien v. Univ. Community Tenants Union, Inc. (1975), 42 Ohio St.2d 242.
It is well settled that in order for a writ of mandamus to issue, the relator must demonstrate that (1) he has a clear legal right to the relief prayed for, (2) respondent is under a clear legal duty to perform the acts, and (3) relator has no plain and adequate remedy in the ordinary course of law. State ex rel. Berger v. McMonagle (1983),6 Ohio St.3d 28, 29.
The instant complaint fails to allege that relator has no plain and adequate remedy in the ordinary course of law. Nor does the instant complaint allege that an appeal as of right from the juvenile court judgment pursuant to App.R. 4 could not have provided her with a plain and adequate remedy in the ordinary course of law. However, even if relator were to amend her complaint to allege the lack of a plain and adequate remedy of law, this court would be compelled, nevertheless, to dismiss this action for the failure to state a claim upon which relief in mandamus can be granted.
Analysis begins with a review of the statutes to which relator seeks to compel respondent's compliance.
R.C. 5139.04 sets forth the powers and duties of ODYS. In her complaint, relator points out that R.C. 5139.04(B) requires ODYS to "[r]eceive custody of all children committed to it under Chapter 2151. of the Revised Code" and to "issue any orders, as it considers best suited to the needs of any of those children and the interest of the public, for the treatment of each of those children[.]"
R.C. 5139.13(A) requires ODYS to "[c]ontrol and manage all institutions for the rehabilitation of delinquent children and youthful offenders * * * [.]" R.C. 5139.13(B) requires ODYS to "[p]rovide treatment and training for children committed to the department * * * [.]"
R.C. 5139.13(D) requires ODYS to "[e]stablish and maintain any other facilities necessary for the training, treatment and rehabilitation of children committed to the department."
R.C. 5139.50(E)(1) and (2) states:
(E) The release authority shall do all of the following:
 (1) Serve as the final and sole authority for making decisions, in the interests of public safety and the children involved, regarding the release and discharge of all children committed to the legal custody of the department of youth services, except * * * children who have not completed a prescribed minimum period of time or prescribed period of time in a secure facility, or children who are required to remain in a secure facility until they attain twenty-one years of age;
 (2) Establish written policies and procedures for conducting reviews of the status for all youth in the custody of the department, setting or modifying dates of release and discharge, specifying the duration, terms, and conditions of release to be carried out in supervised release subject to the addition of additional consistent terms and conditions by a court in accordance with section 5139.51 of the Revised Code, and giving a child notice of all reviews[.]
R.C. 5139.51(A) states in part:
 (A) The release authority of the department of youth services shall not release a child who is in the custody of the department of youth services from institutional care or institutional care in a secure facility and shall not discharge the child or order the child's release or supervised release prior to the expiration of the prescribed minimum period of institutionalization or institutionalization in a secure facility or prior to the child's attainment of twenty-one years of age, whichever is applicable under the order of commitment, other than as is provided in division (A) of section 2151.38 of the Revised Code. The release authority may conduct periodic reviews of the case of each child who is in the custody of the department and who is eligible for supervised release or discharge after completing the minimum period of time or period of time in an institution prescribed by the committing court. * * *
 The release authority shall determine the date on which a child may be placed on supervised release or discharged. If the release authority believes that a child should be placed on supervised release, it shall comply with division (B) of this section. If the release authority believes that a child should be discharged, it shall comply with division (C) or (E) of this section. If the release authority denies the supervised release or discharge of a child, it shall provide the child with a written record of the reasons for the decision.
Ohio Adm. Code 5139-68-03 states in part:
 (A) Within thirty days of the transfer of physical custody of a youth to the Ohio department of youth services, a release authority member or hearing officer shall initially establish a presumptive release date for that youth. The presumptive release date shall specify the day, month and year of the youth's expected release from institutionalization.
 (B) In establishing a youth's presumptive release date from institutionalization, the release authority shall consider at least the following factors:
 (1) The judicially prescribed minimum period of institutionalization based upon felony level or category of offense as stated in the journal entry minus any detention credits;
(2) The risk level of a youth to re-offend;
(3) The youth's treatment needs;
(4) Any harm or injury to the victim(s),
(5) Any aggravating or mitigating factors * * *; and
 (6) Any other relevant information requested by the release authority related to the youth's case.
* * *
 (F) Upon the establishment of a youth's presumptive release date, the release authority shall set a date on or about which the youth's case shall next be considered for review or release. * * *
While relator seeks a writ of mandamus to compel respondent to comply with various sections of Chapter 5139 of the Revised Code together with the administrative code provision, it is clear beyond doubt that the pivotal premise for relief in mandamus is relator's assertion that, under R.C. 2151.355, the juvenile court was without jurisdiction and authority to order that relator not be released from ODYS's institutionalization until she attains the age of twenty-one years.
In effect, relator asks that the writ of mandamus order respondent to ignore the provision of the juvenile court's journal entry ordering institutionalization until relator reaches age twenty-one on grounds that the juvenile court was without authority to insert that provision in its judgment entry. In effect, relator asks this court to edit or rewrite the juvenile court's journal entry so that it commits relator to the custody of ODYS for an indefinite term consisting of a minimum period of one year and a maximum period not to exceed the child's attainment of twenty-one years.
In effect, this original action is a collateral attack upon the judgment of the juvenile court. In this action, relator attempts to define respondent's duty to her in accordance with her version of the way the juvenile court's judgment should read.
In her memorandum filed on February 22, 2002, in response to the magistrate's "Show Cause Order," relator admits that no appeal was taken from the juvenile court's judgment.
In In re Anderson (2001), 92 Ohio St.3d 63, the court, noting that it has long held that juvenile court proceedings are civil rather than criminal in nature, held that the time for filing a notice of appeal from the juvenile court judgment never began to run because the court failed to comply with Civ.R. 58(B)'s requirement that the court direct the clerk to serve upon all parties notice of the judgment and its date of entry upon the journal.
In her memorandum, relator asserts that she did not appeal the juvenile court's judgment because she "was not served a copy of her judgment entry nor did trial counsel inform her of her right to appeal." (Relator's memorandum at 5.) Relator then asserts that an appeal of the juvenile court's judgment to the Eighth District Court of Appeals would be inadequate because that court "is not accepting appeals filed pursuant to In re Anderson." In short, relator seems to assert that her right to appeal the juvenile court's judgment was rendered inadequate because allegedly the juvenile court failed to comply with Civ.R. 58(B) and allegedly the Eighth District Court of Appeals will not follow In re Anderson, supra.
Civ.R. 58(B) provides in part:
 When the court signs a judgment, the court shall endorse thereon a direction to the clerk to serve upon all parties not in default for failure to appear notice of the judgment and its date of entry upon the journal. Within three days of entering the judgment upon the journal, the clerk shall serve the parties in a manner prescribed by Civ.R. 5(B) and note the service in the appearance docket.
In her memorandum filed on February 22, 2002, relator does not assert that her trial counsel was not served pursuant to Civ.R. 58(B). Relator only asserts that her trial counsel failed to inform her of her right to appeal. In re Anderson does not address the situation where trial counsel is served with notice under Civ.R. 58(B), but fails to inform the client of the right to appeal. Accordingly, In re Anderson does not compel the conclusion that relator's right to appeal was inadequate even if, for the sake of argument, we accept relator's assertion that she, herself, was never served with notice of the judgment.
In this action, the juvenile court's journal entry indicates that the disposition was a result of a negotiated plea bargain in which the state agreed to withdraw a Juv.R. 30 motion to transfer the case to the adult division of common pleas court. Relator received the benefit of her plea bargain when the state withdrew its motion to transfer the case to the adult division.
It is certainly conceivable that a party to a judgment that contains an error might conclude that it is in his or her best interest not to appeal that judgment. In such a scenario, a decision not to appeal does not render the right to appeal inadequate simply because the error in the judgment remains and the time for appeal has run.
It is clear beyond doubt from the complaint that this action is barred by a plain and adequate remedy at law and that the complaint fails to state a claim upon which relief in mandamus can be granted.
Accordingly, it is the magistrate's decision that this court dismiss this action.