**[Cite as *In re T.T.*, 2019-Ohio-3002.]**

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY**

IN RE T.T.

:
:
:      Appellate Case No. 28326
:
:      Trial Court Case No. 2018-5011
:
:      (Appeal from Common Pleas Court –
:      Juvenile Division)
:
:

. . . . . . . . . .

O P I N I O N

Rendered on the 26th day of July, 2019.

. . . . . . . . . .

MATHIAS H. HECK, JR., by ANDREW T. FRENCH, Atty. Reg. No. 0069384, Assistant Prosecuting Attorney, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, 301 West Third Street, 5th Floor, Dayton, Ohio 45422
     Attorney for Appellant

JEFFREY D. LIVINGSTON, Atty. Reg. No. 0062466, 2312 Far Hills Avenue, #143, Dayton, Ohio 45419
     Attorney for Appellee

. . . . . . . . . . . .

DONOVAN, J.

{¶ 1} The State appeals from the February 22, 2019 order of the juvenile court, which granted T.T.'s motion to dismiss the State's complaint for assault. For the reasons that follow, we reverse the judgment of the trial court and remand the matter for further proceedings.

{¶ 2} The State's complaint, which was filed in the Montgomery County Court of Common Pleas, Juvenile Division on October 7, 2018, alleged that:

> * * * [T.T.], a child about the age of 16 years, * * * appears to be delinquent in that on or about 09-25-18, * * * [she] did knowingly cause or attempt to cause physical harm to [the victim] and the offense occurred in or on the grounds of a state correctional institution or an institution at the department of youth services, the victim of the offense was an employee of the department of rehabilitation and correction, the department of youth services, and the offense was committed by a person incarcerated in the state correctional institution, or by a person institutionalized in the department of youth services institution * * *.

The complaint specified that the offense charged was a felony of the third degree. The circumstances under which the assault was allegedly committed enhanced the degree of the offense.

{¶ 3} At a hearing on October 31, 2018, T.T. denied responsibility for the assault, which allegedly occurred at the Montgomery County Center for Adolescent Services ("CAS"). On December 4, 2018, T.T. filed a motion to dismiss. She was charged with knowingly causing or attempting to cause physical harm to the victim and further that the

offense occurred 1) in an institution of the Department of Youth Services ("DYS"), 2) the victim was an employee of the DYS, and 3) the offense was committed by a person institutionalized in the DYS institution pursuant to a commitment to the DYS, but T.T. asserted that the victim was not an employee of the DYS and that the CAS was not an institution of the DYS.

{¶ 4} On January 25, 2019, the State responded to T.T.'s motion to dismiss. The State noted that on August 31, 2017, T.T. had been committed to the DYS for secure confinement until the age of 21, having been adjudicated delinquent in Lucas County for murder. The State attached to its response the following documents: the Lucas County judgment entry, an August 3, 2017 correspondence from the DYS Bureau Chief of Community Facilities to the Director of CAS, stating that CAS's "approved facility budget" for fiscal year 2018 was $3,659,237, and a copy of the Ohio DYS Community Corrections Facilities Grant/Renewal Application and Agreement between DYS and CAS for July 2017 through June 2018.

{¶ 5} The State further asserted that T.T. and two other female DYS-incarcerated juveniles assaulted a detention officer at CAS. According to the State, pursuant to the agreement between CAS and DYS, female DYS-incarcerated juveniles were housed in a "discrete separate unit from non-DYS juveniles committed to CAS," and the $3,659,237 allocated to CAS for the 2018 fiscal year included costs associated with 15 beds available for females at CAS. "At the time of the assault [T.T.] was in the custody of DYS and housed in the DYS portion of the CAS facility."

{¶ 6} The State also asserted that Juv.R. 22(D) enumerates five separate prehearing motions that "must be heard prior to the adjudicatory hearing," and that T.T.'s

motion to dismiss did not fall within "any of the listed five prehearing motions." According to the State, T.T.'s motion was, instead, a request for the juvenile court to issue factual findings before the State put on any evidence on the issues of whether the victim was or was not an employee of DYS and whether CAS was or was not an institution of DYS. The State argued that these questions were factual issues that should be determined by the trier of fact at the adjudicatory hearing. The State also asserted that, because the juvenile rules do not specifically deal with motions to dismiss or motions for acquittal, "the analogous Crim.R. 29 should be used; "[u]nder Crim.R. 29 a motion for acquittal may not be granted until the conclusion of the State's case in chief," and it would therefore be improper for the juvenile court to sustain T.T.'s motion to dismiss prior to the hearing.

{¶ 7} The State acknowledged that the victim in this case was not, in fact, an employee of DYS, but it asserted that the victim was employed by CAS, and "it necessarily follows [that] her position would not exist without the 15 beds DYS ha[d] contracted for at a cost of $3,659,237 for fiscal year 2018." The State argued that the agreement between CAS and DYS imposed several requirements upon CAS as part of the grant allocation, including making CAS staff available for regular interviewing, observation, and surveying so that the DYS Central Office could assess the services provided on an ongoing basis. According to the State, the victim's "position [was] ostensibly created by and at least partially subjected to some level of oversight by DYS."

{¶ 8} The State analogized assaults committed by DYS inmates on CAS employees to assaults committed by inmates at private prisons." The State argued that "[p]rivate prison employees are not directly employed by the department of rehabilitation and correction in the same manner that CAS employees are not directly employed by

DYS. They instead work for an entity which contracts with the department of rehabilitation and correction, or in the case of CAS with DYS, to house inmates." The State asserted that "private prisons themselves are pseudo state correctional facilities in the same manner the units devoted to DYS inmates at CAS are a pseudo DYS facility."

{¶ 9} The State pointed out that the Ninth and Eleventh Districts have both concluded that assaults by inmates on corrections officers at a privately-operated correction institution are properly treated as assaults on corrections officers at a state facility, citing *State v. Godfrey*, 9th Dist. Lorain No. 09CA009703, 2011-Ohio-512, ¶ 15, and *State v. Johnson*, 11th Dist. Ashtabula No. 2001-A-0043, 2002-Ohio-6570, ¶ 20. According to the State, "[t]his conclusion logically follows" because the defendants in those cases were committed to the department of corrections and the private corrections officers assaulted were doing the same job as a state corrections officer. Here, T.T. was committed to DYS, which placed her at CAS, and the victim of the assault was employed as a corrections officer at CAS in the same manner a corrections officer would be employed in DYS's main facility. The victim was also working at a DYS facility when she was assaulted by a person committed to DYS. The State argued that the employment status of the victim and the relationship between CAS and DYS were factual issues that deserved to be resolved at an adjudicatory hearing, and that the motion to dismiss prior to the hearing should be dismissed.

{¶ 10} On February 7, 2019, T.T. filed a reply, pointing out that "even the State agrees that the victim herein [was] not an employee of [DYS]," from which she concluded that her offense could not be elevated to a felony of the third degree. T.T. also noted that the terms of the agreement between DYS and CAS provided that CAS was contractually

forbidden from employing any employee of DYS and that ""it seems clear that [DYS] would not consider [the victim] as one of its employees." T.T. further argued that, pursuant to the grant agreement, "the youths are at [CAS]. They are not institutionalized in a [DYS] institution."

{¶ 11} T.T. argued that *Johnson* "does not stand for the proposition that assaults by inmates on correction officers at * * * privately operated prisons are to be treated as assaults on correction officers at a state prison." T.T. further distinguished *Godfrey* as "a case regarding the sufficiency of the evidence" where the court merely "found that there was testimony from the victim that the offense was on the grounds of a state correctional institution, that the victim was a corrections officer, and that the defendant was an inmate of the correctional institution." She stated:

The State fails to point out that the legislature has acted in regards to private operation and management of initial intensive program prison. R.C. 9.06. The department of rehabilitation and correction may contract for private operation and management pursuant to this section of the initial intensive program prison established pursuant to section 5120.033 of the Revised Code. Section 5120.033 deals with those convicted of OVI. The Court in *Godfrey* in dicta did say that under R.C. 9.06(G), an offense that would be a crime at a state correctional institution shall be a crime if committed by an inmate at a facility operated under R.C. 9.06. *Id.* at ¶ 20. [CAS] is not an Intensive Program Prison (IPP). It is not a private operation under R.C. 9.06. It is wholly inapplicable to the case at hand.

{¶ 12} T.T. concluded that CAS would be in violation of the grant agreement if the

victim-employee were an employee of DYS. "No need for a hearing exists. This alleged assault cannot be a felony of third degree."

{¶ 13} On February 7, 2019, the State asked to supplement its response to T.T.'s motion to dismiss, and it filed a supplemental response on February 11, 2019. The State asserted that there was no dispute in this case that T.T. committed an assault on the grounds of a correctional facility or that she was institutionalized in DYS at the time of the offense. "These two facts alone render (C)(4)(b) and (C)(4)(c) [of R.C. 2903.13] irrelevant to this case and by default leave only (C)(3) or (C)(4)(a)." The State asserted that each "elevating provision contains the same three elements: 1) where the offense was committed 2) who the victim of the offense was and 3) who committed the offense."

{¶ 14} Regarding the first element, the State asserted that, because CAS contracts with DYS for the institutional care and custody of felony delinquents, CAS is "by definition a DYS institution," and the first element was met for R.C. 2903.13(C)(3) (i.e., the offense occurred on the grounds of an institution of the DYS). Conversely, the State asserted that the first element of R.C. 2903.13(C)(4)(a) was not met; "(C)(4)(a) requires the offense to occur on the grounds of a local correctional facility. The DYS portion of CAS is a DYS institution and not a local correctional facility so the first requisite elements of (C)(4)(a) cannot be met in this case."

{¶ 15} Regarding the second element, the State asserted that the victim was acting as a DYS employee at the time of the assault, because she "worked within the DYS portion of CAS at the time of the offense." The State further asserted that the testimony would show that but for multi-million dollar grant "and the subsequent existence of DYS girls at CAS," the victim's job "would not have existed" and the victim "would not have

been in the DYS portion of CAS" on the date of the assault. The State argued that, although the victim was employed by CAS, her position was subject to oversight from DYS, and she was "for all intents and purposes working as an employee of [DYS] in a DYS institution" at the time of the offense. As such, the State contended that the second element of R.C. 2903.13(C)(3) could be satisfactorily proven in this case, i.e., T.T. was institutionalized at a DYS institution.

{¶ 16} Regarding the final element, the State asserted that the Lucas County court that committed T.T. did not commit her to a local correction facility; it committed her to a DYS institution. "CAS receives a significant financial incentive to comport with the rules and regulations outlined in their grant agreement with DYS to operate a DYS institution for the institutional care and custody of felony delinquents." According to the State, the DYS portion of CAS should be treated the same as any other DYS facility, citing R.C. 5139.01(A)(4).

{¶ 17} The trial court sustained T.T.'s motion to dismiss prior to an adjudicatory hearing. After quoting R.C. 9.06, the court reasoned:

* * * [F]emale DYS youth are housed at CAS pursuant to a DYS "Grant Agreement for Community Corrections Facilities" pursuant to ORC 5139.36. (Court's Exhibit 1, attached. Note Section 9 which specifically details the services CAS will provide to DYS committed females housed at CAS.) ORC 5139.36(A) states that DYS "shall make grants that provide financial resources to operate community corrections facilities for felony delinquents." Further, ORC 5139.36(E)(2)(b) directs that DYS "may, with the consent of the juvenile court with jurisdiction over the Montgomery

County [CAS], establish a single unit within the community corrections facility for female felony delinquents committed to [DYS] custody. If the unit is established under this division, the department may place a female delinquent committed to [DYS] custody into the unit in the community corrections facility." ORC 5139.01(14) defines a community corrections facility as "a county or multicounty rehabilitation center for felony delinquents who have been committed to [DYS] and diverted from care and custody in an institution and placed in the rehabilitation center pursuant to division (E) of section 5139.36 of the Revised Code. Finally, this Court notes that there is nothing in the DYS/Montgomery County Juvenile Court "Grant Agreement for Community Corrections Facilities" that indicates or even implies that CAS shall be designated as a private correctional facility subject to ORC 9.06.

It is clear to this Court that pursuant to statute, CAS is a community corrections facility, not a privately operated corrections facility contracting with DYS under ORC 9.06. ORC 9.06 is inapplicable. As the State has conceded that [the victim] is not a DYS employee and this Court has found ORC 9.06 to be inapplicable, the State cannot prove that the victim of the offense * * * was an employee of DYS, which is an essential element of ORC 2903.13(C)(3). As this matter was resolved via statute and the briefs of the parties, the Court finds a hearing unnecessary.

The court dismissed the complaint without prejudice.

{¶ 18} The State asserts one assignment of error on appeal:

THE TRIAL COURT LACKED THE AUTHORITY TO GRANT T.T.'S MOTION TO DISMISS.

**{¶ 19}** According to the State, the juvenile court's order in the instant case must be reversed, because a juvenile court has no authority to enter summary judgment to a defendant during a juvenile delinquency case. The State asserts that the juvenile court did not address its procedural arguments before granting T.T.'s motion on the merits, and the Rules of Juvenile Procedure "provide no mechanism for the trial court to grant a 'motion to dismiss' under these circumstances." The State asserts that the trial court was required to determine, in ruling on the motion to dismiss, if the complaint against T.T. described "an actual criminal offense under Ohio law," and if the "complaint's allegations tracked the language of the relevant statute." According to the State, "T.T. never alleged in her motion to dismiss that the complaint failed to charge a criminal offense on its face."

**{¶ 20}** The State argues that, if a charging instrument is legally sufficient, the question of whether the State is able to support the allegations with sufficient evidence "must be left to a trial on the merits"; "if T.T. had been charged as an adult and filed the same motion to dismiss she filed in the instant case, the trial court would have been required to reject it." The State argues that, while juvenile delinquency proceedings are civil in nature, they "are governed by the Rules of Juvenile Procedure, not the Rules of Civil Procedure."

**{¶ 21}** The State asserts that, pursuant to Juv.R. 22(D), "a motion to dismiss based on 'defects in the complaint' must be filed before the adjudicatory hearing, but if the 'defect' is the failure of the complaint to 'charge an offense,' the motion may be filed at any time during the proceedings." The State asserts that Juv.R. 22 is "substantially

similar" to Crim.R. 12, and since "this Court has held that Crim.R. 12 does not allow a 'motion to dismiss' that challenges the sufficiency of the evidence the defendant anticipates that State will use to support the charged offense, it follows that Juv.R. 22's nearly identical language also does not allow for the motion T.T. filed in the instant case."

{¶ 22} The State further directs our attention to Juv.R. 29, which "obligates the juvenile court to set the case for an adjudicatory hearing after the filing of the complaint. * * * The court must then ask the charged juvenile to enter an admission or denial of the allegations stated in the complaint." The State asserts that "if a juvenile enters a denial to a delinquency complaint, the trial court must conduct an adjudicatory hearing, order the presentation of evidence, and make an actual determination of the issues, i.e., whether the State proved beyond a reasonable doubt the allegations charged in the complaint." The State argues that nothing in Juv.R. 29 allows for a trial court to determine that the State will not be able to carry its burden of proof prior to any evidence actually being presented.

{¶ 23} Finally, the State asserts:

When Juv.R. 22 and Juv.R. 29 are read *in pari materia*, the following principles emerge: (1) a juvenile may not challenge the sufficiency of the evidence used to support the offense charged against her in a prehearing motion, because that issue cannot be resolved "without hearing on the allegations of the complaint;" (2) if the juvenile does not admit to the charges, the trial court is obligated to conduct an adjudicatory hearing, if the juvenile's only challenge is the legal sufficiency of the State's evidence; (3) the court is only authorized to dismiss the complaint for insufficient evidence

after it has conducted the adjudicatory hearing and found that the State has not carried its burden of proof.

In the instant case, the complaint filed against T.T. alleged a cognizable criminal offense under Ohio law. T.T.'s motion to dismiss did not claim that the complaint failed to charge an offense, but instead only alleged that the State could not prove two essential elements of the offense. In this situation, the trial court was obliged to set the matter for an adjudicatory hearing and hear evidence before evaluating T.T.'s insufficiency argument. Instead, the court granted T.T.'s motion to dismiss without ever hearing any testimony. Since the court was not authorized by any rule or statute to proceed in this way, this Court must reverse the juvenile court's decision.

{¶ 24} T.T. responds that the juvenile court correctly found that no hearing was necessary, given that the State conceded that it could not prove an essential element beyond a reasonable doubt. According to T.T., "the State conceded twice that it could not prove beyond a reasonable doubt that the victim was an employee of [DYS]," which is an essential element of R.C. 2903.13(C)(3). T.T. asserts that having "a hearing on whether the victim is an employee of [DYS] after you have conceded that fact, twice, is a waste of judicial time, resources, and economy. Due process is not offended and de novo review is appropriate." T.T. cites Juv.R. 1(B)(2) and asserts that the "juvenile rules are to be liberally interpreted and construed to secure simplicity and uniformity in procedure, fairness in administration, and the elimination of unjustifiable expense and delay."

**{¶ 25}** In reply, the State asserts that it "is disingenuous to suggest that the State conceded that it could not prove that the victim was an 'employee' of DYS"; although it acknowledged that the victim was employed by CAS, the State "went on to represent that the evidence would show that the contractual relationship between CAS and DYS, and the nature of the victim's position within CAS, meant that the victim met the statutory requirement of being 'an employee' of DYS."   The State asserts that it "made this explicit in its supplemental response, in which it argued that the victim 'was acting as a DYS employee' on the date of the incident. * * * Given all of this, the State never conceded its case away below."

**{¶ 26}** According to the State, T.T. fails to provide a persuasive argument in her brief as to how the trial court had the authority, under any rule or statute, to reach the merits of her motion, whatever they may have been.   The State asserts that T.T. merely "cites Juv.R. 1 for the proposition that the Juvenile Rules 'are to be liberally construed.' " The State asserts that T.T. ignores Juv.R. 29 and that "Juv.R. 1 cannot effectively nullify the specific requirements contained in Juv.R. 22 and Juv.R. 29."

**{¶ 27}** We begin our analysis by addressing the State's assertion that, under the Rules of Juvenile Procedure, the juvenile court did not have the authority to dismiss the complaint.

**{¶ 28}** Juv.R. 29(A) provides: "The date for the adjudicatory hearing shall be set when the complaint is filed or as soon thereafter as practicable. * * *."   At the commencement of the hearing, Juv.R. 29(B) requires the juvenile court in part to "request each party against whom allegations are being made in the complaint to admit or deny the allegations." Juv.R. 29(E) provides:

**(E) Initial Procedure Upon Entry of a Denial.** If a party denies the allegations the court shall:

(1) Direct the prosecuting attorney or another attorney-at-law to assist the court by presenting evidence in support of the allegations of a complaint;

(2) Order the separation of witnesses, upon request of any party;

(3) Take all testimony under oath or affirmation in either question-answer or narrative form; and

(4) Determine the issues by proof beyond a reasonable doubt in juvenile traffic offense, delinquency, and unruly proceedings; by clear and convincing evidence in dependency, neglect, and abuse cases, and in a removal action; and by a preponderance of the evidence in all other cases.

{¶ 29} Juv.R. 22 provides, in part:

(D) **Prehearing Motions.** Any defense, objection or request which is capable of determination without hearing on the allegations of the complaint may be raised before the adjudicatory hearing by motion. The following must be heard before the adjudicatory hearing, though not necessarily on a separate date.

(1) Defenses or objections based on defects in the institution of the proceeding;

(2) Defenses or objections based on defects in the complaint (other than failure to show jurisdiction in the court or to charge an offense which objections shall be noticed by the court at any time during the pendency of

the proceeding);

(3) Motions to suppress evidence on the ground that it was illegally obtained;

(4) Motions for discovery;

(5) Motions to determine whether the child is eligible to receive a sentence as a serious youthful offender.

{¶ 30} Juv.R. 22(D) parallels Crim. R. 12(C) ("Prior to trial, any party may raise by motion any defense, objection, evidentiary issue, or request that is capable of determination without the trial of the general issue."). While juvenile court proceedings are civil, rather than criminal, in nature, the Ohio Supreme Court has noted that "there are criminal aspects to juvenile court proceedings." *In re Anderson*, 92 Ohio St.3d 63, 65-66, 748 N.E.2d 67 (2001).

{¶ 31} As this Court has previously noted in the context of the criminal rules:

"A motion to dismiss an indictment tests the legal sufficiency of the indictment, regardless of the quality or quantity of the evidence that may be introduced by either the state or the defendant." *State ex rel. Steffen v. Court of Appeals, First Appellate Dist.,*126 Ohio St.3d 405, 2010-Ohio-2430, 934 N.E.2d 906, ¶ 34. Accordingly, in ruling on a motion to dismiss an indictment, the trial court may not examine the sufficiency of the state's evidence. *State v. Miller* (Dec. 4, 1998), Montgomery App. No. 17273, 1998 WL 833796. Rather, the court must look to the indictment to determine only whether the charges as set forth describe an offense under the law of the state. *Id.* "Crim.R. 12 permits a court to consider evidence beyond the

face of an indictment when ruling on a pretrial motion to dismiss an indictment if the matter is capable of determination without trial of the general issue." *State v. Brady,* 119 Ohio St.3d 375, 2008-Ohio-4493, 894 N.E.2d 671, ¶ 3. However, whether sufficient evidence exists to convict on an indictment—that is, to persuade the finder of fact of all of the essential elements of the offense beyond reasonable doubt—is a matter that must be determined through a trial on charges alleged in the indictment; there is no pretrial mechanism for this purpose. *State v. Netzley,* Darke App. No. 07-CA-1723, 2008-Ohio-3009, ¶ 7.

*State v. Pointer*, 193 Ohio App.3d 674, 2011-Ohio-1419, 953, 953 N.E.2d 853, ¶16 (2d Dist.).

{¶ 32} In *Brady*, cited above, the Supreme Court of Ohio examined pretrial motions to dismiss in *State v. O'Neal*, 114 Ohio App.3d 335, 336, 683 N.E.2d 105 (1996), and *State v. Varner*, 81 Ohio App.3d 85, 610 N.E.2d 476 (9th Dist.1991), as follows:

In *O'Neal*, the trial court granted the defendant's pretrial motion to dismiss an indictment for possession of cocaine in violation of R.C. 2925.11(A) on the ground that the small amount of cocaine found on his person was insufficient as a matter of law to sustain the "knowingly" element of the possession charge. *O'Neal*, 114 Ohio App.3d at 336, 683 N.E.2d 105. In reviewing the judgment, the appellate court stated: " 'The proper determination [for the trial court to make in reviewing the motion to dismiss the indictment] was whether the allegations contained in the indictment made out offenses under Ohio criminal law. If they did, it was premature

to determine, in advance of trial, whether the state could satisfy its burden of proof with respect to those charges.' " *Id.*, quoting [*State v.*] *Patterson*, 63 Ohio App.3d at 95, 577 N.E.2d 1165. Because O'Neal's motion required consideration of the general issue at trial—whether O'Neal knowingly possessed the small amount of cocaine found on his person—the Montgomery County Court of Appeals determined that the pretrial dismissal of the indictment was improper.

Similarly, in *Varner*, the Summit County Court of Appeals considered the dismissal of an indictment for failure to appear in violation of a recognizance bond. The motion to dismiss required the trial court to examine Varner's bond to determine whether it was a recognizance bond. The appellate court reversed the order granting dismissal, holding that "[t]he Ohio Rules of Criminal Procedure, * * * do not allow for 'summary judgment' on an indictment prior to trial." *Varner*, 81 Ohio App.3d at 86-87, 610 N.E.2d 476.

*Brady* at ¶ 16-17.

{¶ 33} As the State asserts, T.T.'s complaint tracked the language of R.C. 2903.13(C)(3)[1] and made out an offense. The juvenile court determined that the State could not meet its burden of proof. We agree with the State that, since a motion to

---

[1] "If the offense occurs in or on the grounds of a state correctional institution or an institution of the department of youth services, the victim of the offense is an employee of the department of rehabilitation and correction or the department of youth services, and the offense is committed by a person incarcerated in the state correctional institution or by a person institutionalized in the department of youth services institution pursuant to a commitment to the department of youth services, assault is a felony of the third degree." R.C. 2903.13(C)(3).

dismiss is not permitted to challenge the sufficiency of the evidence in the criminal context, "it follows that Juv.R. 22's nearly identical language also does not allow for the motion T.T. filed in the instant case."

**{¶ 34}** Accordingly, the State's sole assignment of error is sustained. The judgment of the trial court is reversed, and the matter is remanded for further proceedings.

. . . . . . . . . . . . .

WELBAUM, P.J. and FROELICH, J., concur.

Copies sent to:

Mathias H. Heck, Jr.
Andrew T. French
Jeffrey D. Livingston
Sarah Siemann, GAL
Hon. Anthony Capizzi