OPINION
{¶ 1} Dana Bays, a minor, appeals from the trial court's judgment entry finding her delinquent and a subsequent judgment entry finding her in violation of a community control sanction and ordering her placement in the Miami Valley Juvenile Rehabilitation Center.[1]
 {¶ 2} Bays advances four assignments of error on appeal. First, she contends the trial court erred in proceeding with a delinquency adjudication without obtaining a valid waiver of her right to counsel. Second, she argues that the trial court's delinquency adjudication was not supported by legally sufficient evidence. Third, she asserts that the delinquency adjudication was against the manifest weight of the evidence. Fourth, she claims that the trial court failed to comply with the notice provisions of Juv. R. 35 prior to revoking her community control sanction and ordering her placement in the Miami Valley Juvenile Rehabilitation Center.
 {¶ 3} The present appeal stems from an altercation between fifteen-year-old Bays and her twenty-four-year-old sister, Amy Pleukharp. The record reflects that Pleukharp called the police on October 25, 2001, and reported that Bays had struck her in the face with a telephone. As a result of this incident, a complaint was filed in the Greene County Court of Common Pleas, Juvenile Division, alleging that Bays was a delinquent child by reason of having committed domestic violence, a felony of the fifth degree if committed by an adult.[2]
Bays' mother subsequently received a summons which explained that Bays had a right to have an attorney represent her and a right to appointed counsel if she qualified. The summons also identified the potential dispositional options. Thereafter, Bays made an initial appearance where she was informed of her right to an attorney, including the possibility of appointed counsel, and the potential consequences if she admitted the charge against her. At that time, the trial court entered a denial on behalf of Bays, who was accompanied by her mother.
 {¶ 4} The matter proceeded to a contested adjudication hearing on January 23, 2002, where Bays again appeared with her mother but without counsel. The State called three witnesses: Amy Pleukharp, fourteen-year-old Julie Bays, and an individual identified only as "officer King." Bays did not question the State's witnesses, did not call any defense witnesses, and did not testify in her own defense. After hearing the evidence presented by the State, the trial court adjudicated Bays a delinquent child. The trial court then ordered her committed to the Department of Youth Services but suspended the commitment and placed her on community control with certain conditions.
 {¶ 5} Thereafter, Bays' probation officer filed a complaint against her, alleging that she had violated the terms of her community control sanction by running away from home. On May 2, 2002, the trial court held what it referred to as a "placement hearing." Bays appeared at the hearing with her mother but without counsel. During the hearing, she agreed that she should not be running away. The trial court then ordered her committed to the Department of Youth Services, suspended the commitment, and ordered her placed in the Montgomery County Juvenile Rehabilitation Center. Bays subsequently filed a timely notice of appeal from the trial court's January 23, 2002, judgment entry adjudicating her delinquent and its May 2, 2002, judgment entry finding her in violation of a community control sanction and ordering her placement in the Miami Valley Juvenile Rehabilitation Center.[3]
 {¶ 6} In her first assignment of error, Bays contends the trial court erred in conducting a delinquency adjudication without obtaining a valid waiver of her right to counsel. Although the trial court informed her that she had a right to counsel, Bays insists that it failed to ascertain whether she voluntarily, knowingly, and intelligently relinquished that right. In response, the State seems to suggest that a valid waiver may be inferred from the fact that the Bays proceeded with the adjudicatory hearing and did not obtain or request counsel, despite having been informed of her right to an attorney. The State also asserts, without citation to any evidence, that "[t]he practice of the Greene County Juvenile Court is to provide the telephone number of the public defender to the delinquent and her parents when a denial is entered on behalf of the child."
 {¶ 7} Upon review, we find Bays' first assignment of error to be persuasive. This court previously has recognized that Juv. R. 4(A), Juv. R. 29(B), and R.C. § 2151.352 entitle a juvenile to be represented by counsel at all stages of juvenile court proceedings. In the Matter ofStovall (Aug. 6, 1999), Miami App. No. 99 CA 7; see also In re Shane
(Jan. 26, 2001), Darke App. No. 1523. Although a juvenile may waive her right to counsel, such a waiver may occur only with the permission of the juvenile court. See Juv. R. 3. In addition, Juv. R. 29(B)(3) obligates the court, at the beginning of an adjudicatory hearing, to "[i]nform unrepresented parties of their right to counsel and determine if those parties are waiving their right to counsel." Furthermore, Juv. R. 29(B)(5) provides that the court must "[i]nform any unrepresented party who waives the right to counsel of the right to obtain counsel at any stage of the proceedings[.]" While the failure to inform a juvenile of her rights under Juv. R. 29(B) constitutes reversible error,[4] this court has required only substantial compliance with the rule. In re Pyles, Montgomery App. No. 19354, 2002-Ohio-5539.
 {¶ 8} We also have observed "that there is no material difference with respect to the constitutional right to counsel between adult and juvenile proceedings." In re Doyle (1997), 122 Ohio App.3d 767, 771, citing In re Gault (1967), 387 U.S. 1. As a result, a court must fully and clearly explain the right to counsel to a juvenile defendant, who then must affirmatively waive that right on the record. Stovall, supra, at *2. "Like an adult's waiver, a juvenile's waiver of the right to counsel must be voluntary, knowing, and intelligent." Doyle,122 Ohio App.3d at 771, citing State v. Gibson (1976), 45 Ohio St.2d 366. InGibson, the Ohio Supreme Court recognized that a criminal defendant has a constitutional right of self-representation, and she may defend herself when she voluntarily, knowingly, and intelligently elects to do so. Id. at 377-378. As we cautioned in State v. Dyer (1996), 117 Ohio App.3d 92,95, however, "[c]ourts are to indulge in every reasonable presumption against the waiver of a fundamental constitutional right[,] including the right to be represented by counsel." As a result, a valid waiver affirmatively must appear in the record, and the state bears the burden of overcoming the presumption against a valid waiver. Id
 {¶ 9} With the foregoing requirements in mind, we cannot find a valid waiver of the right to counsel in the present case. The evidence concerning Bays' waiver of her right to counsel is sparse. The record reflects that her mother received a summons which indicated that Bays had a right to have an attorney represent her and a right to appointed counsel if she qualified. Thereafter, Bays appeared before the trial court on November 21, 2001, for the purpose of admitting or denying the delinquency charge against her. At the outset of that proceeding, the trial court orally informed Bays that she had a right to an attorney and a right to appointed counsel if she could not afford an attorney. Thereafter, at the adjudication hearing, the trial court made no mention of the counsel issue and merely asked whether Bays was ready to proceed. The record is devoid of any other evidence or testimony concerning the waiver of Bays' right to counsel.
 {¶ 10} A review of the foregoing facts does not reveal substantial compliance with Juv. R. 29(B)(3) or Juv. R. 29(B)(5). As noted above, the former provision obligates the juvenile court, at the beginning of an adjudicatory hearing, to "[i]nform unrepresented parties of their right to counsel and determine if those parties are waiving their right to counsel."[5] The latter provision states that the court must "[i]nform any unrepresented party who waives the right to counsel of the right to obtain counsel at any stage of the proceedings[.]" In the present case, the juvenile court informed Bays of her right to counsel but never inquired whether she was waiving that right. Even assuming, arguendo, that Bays did waive her right to counsel, the juvenile court still violated Juv. R. 29(B)(5) by failing to inform her of her right to obtain counsel at any stage of the proceedings. The record in the present case persuades us that the trial court did not even minimally comply with the requirements of Juv. R. 29(B)(3) or Juv. R. 29(B)(5).
 {¶ 11} The record also reflects neither a full and clear explanation of Bays' right to counsel nor an affirmative waiver of that right on the record. In this regard, the trial court failed to ascertain whether Bays voluntarily, knowingly, and intelligently waived her right to counsel. Indeed, the record before us reveals that the trial court failed to make any inquiry into whether Bays fully understood and intelligently relinquished her right to counsel. To discharge this duty "properly in light of the strong presumption against waiver of the constitutional right to counsel, a judge must investigate as long and as thoroughly as the circumstances of the case before him demand." Gibson, supra, at 377. "`To be valid such a waiver must be made with an apprehension of the nature of the charges, the statutory offenses included within them, the range of allowable punishments thereunder, possible defenses to the charges and other circumstances in mitigation thereof, and all other facts essential to a broad understanding of the whole matter.'" Id., quoting Von Moltke v. Gillies (1948), 332 U.S. 708, 723.
 {¶ 12} During the initial plea hearing, the trial court minimally did inform Bays about the nature of the charge against her and the statutory offense at issue. The court did this by reading the complaint aloud. See Plea Hearing Transcript at 3-4. The court then explained the range of allowable punishments if Bays were to admit the charge against her.[6] Id. at 4. Contrary to Gibson, however, the trial court did not mention any possible defenses to the charge or mitigating factors. For example, the trial court did not mention the possibility of a self-defense argument. Nor did the trial court address any "other facts essential to a broad understanding of the whole matter." In particular, the trial court made no inquiry into whether Bays truly understood the difficulty of proceeding without counsel or the potential benefits of obtaining an attorney to represent her.[7] In our view, a fifteen-year-old child cannot possibly make a voluntary, knowing, and intelligent decision to waive her constitutional right to counsel without the trial court engaging in at least a short colloquy with her.
 {¶ 13} Based on the record before us, we hold that Bays did not validly waive her right to counsel. See, e.g., Dyer,117 Ohio App.3d at 95 (recognizing that "[t]he state bears the burden of overcoming presumptions against a valid waiver"). In reaching this conclusion, we reject the State's suggestion that Bays validly waived her right to counsel merely by showing up for the adjudicatory hearing without obtaining or requesting counsel.[8] At best, such conduct might suggest a waiver of counsel by implication. As noted above, however, a waiver of counsel must occur with the permission of the juvenile court, and a child affirmatively must waive counsel on the record. In any event, even if Bays implicitly did waive counsel by failing to obtain or request an attorney, the record does not establish that her waiver was valid. We decline to find a valid waiver of the right to counsel based on the mere fact that Bays appeared for the adjudicatory hearing unrepresented. Such a conclusion is particularly unwarranted in light of the shortcomings discussed above. Given that the record in the present case does not affirmatively demonstrate a voluntary, knowing, and intelligent waiver of Bays' right to counsel, we sustain her first assignment of error.
 {¶ 14} In her second assignment of error, Bays contends the trial court's delinquency adjudication was not supported by legally sufficient evidence.[9] When a defendant challenges the sufficiency of the evidence to sustain her conviction, she is arguing that the State presented inadequate evidence on each element of the offense to sustain the verdict as a matter of law. State v. Hawn (2000), 138 Ohio App.3d 449,471. "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." State v. Jenks (1991), 61 Ohio St.3d 259, at paragraph two of the syllabus.
 {¶ 15} In the present case, the trial court found Bays delinquent by reason of having committed domestic violence. In order to obtain a delinquency adjudication, the State was required to prove, beyond a reasonable doubt, that she knowingly caused or attempted to cause physical harm to a household member. See R.C. § 2919.25(A). On appeal, Bays insists that Amy Pleukharp's own actions led to her being hit by a telephone. In particular, Bays argues that Pleukharp pulled the telephone receiver out of Bays' hand, causing the receiver to fly toward Pleukharp and hit her face. As a result, Bays reasons that she did notknowingly cause or attempt to cause physical harm to her sister.
 {¶ 16} Upon review, we find Bays' argument to be unpersuasive. As Bays properly notes, a person acts knowingly, regardless of her purpose, when she is aware that her conduct will probably cause a certain result or will probably be of a certain nature. R.C. § 2901.22(B). Although the trial transcript contains testimony supporting Bays' version of events, it also contains testimony sufficient to support a finding that she knowingly caused or attempted to cause physical harm to Pleukharp. At trial, Pleukharp recanted her prior allegations and insisted that she could not "sit here and really say for sure that she (Bays) hit me because we were tugging at the phone together." See Adjudication Transcript at 8. Fourteen-year-old Julie Bays then offered similar testimony that the appellant merely "let go" of the receiver, which flew back and hit Pleukharp in the face. Upon questioning by the trial court, however, Julie admitted that her prior written statement to police was true and accurate. In that statement, Julie wrote that she had seen the appellant "hit Amy with the phone and then push her[.]" Id. at 17.
 {¶ 17} After considering the evidence, the trial court addressed the appellant and made the following findings on the record:
 {¶ 18} "The Court had to determine who was [sic] credible witnesses. The Court did not believe Amy, and it's understandable. The Court didn't believe Amy because she doesn't want to get her sister in trouble. And, again, that is understandable.
 {¶ 19} "The Court listened to the testimony of Julie Bays who tried to emulate the same testimony that her sister did, and she even tried to use the word `escalate' which indicated to me that that was a rehearsed speech that she was giving. When she couldn't quite get the word escalate out and was then confronted with her statement by the prosecutor, her face turned red, she looked like she was almost in tears, because she would have to tell the truth which would be against her sister, and she didn't want to have to do that against her sister.
 {¶ 20} "Upon further questioning by the Court, she understood that she was required to tell the truth and that, in fact, her statement as was written at the time of the incident was, in fact, a true statement; that you did, in fact, strike your sister with the phone." Id. at 23.
 {¶ 21} In light of the foregoing findings, it is apparent that the trial court disbelieved the testimony supporting the appellant's version of events and found credible Julie Bays' testimony that her written police report was true and accurate. Julie's testimony, if believed, would convince the average mind of the appellant's delinquency beyond a reasonable doubt. As noted above, Julie reported having seen the appellant hit Pleukharp with the telephone and push her. Viewing this evidence in a light most favorable to the prosecution, a rational trier of fact could have found the essential elements of the offense proven beyond a reasonable doubt. In particular, a rational trier of fact could have found that the appellant knowingly caused or attempted to cause physical harm to a household member. Accordingly, we overrule the appellant's second assignment of error.
 {¶ 22} Finally, our disposition of assignment of error number one has rendered moot the appellant's third and fourth assignments of error.[10] Consequently, we decline to address those assignments of error. See App. R. 12(A)(1)(c).
 {¶ 23} Based on the reasoning and citation of authority set forth above, Bays' first assignment of error has been sustained. In Case No. 2002-CA-56, our resolution of Bays' first assignment of error requires us to reverse the trial court's delinquency adjudication and to remand the matter for further proceedings consistent with this opinion. In Case No. 2002-CA-52, we must reverse the trial court's judgment entry finding her in violation of community control and ordering her placement in a rehabilitation center because the violation hearing stemmed from the underlying delinquency adjudication.
 {¶ 24} Judgment reversed and cause remanded in Case No. 2002-CA-56. Judgment reversed in Case NO. 2002-CA-52.
GRADY, J., and YOUNG, J., concur.
[1] The present appeal involves two consolidated cases. In Case No. 2002-CA-56, Bays appeals from the trial court's judgment entry adjudicating her delinquent. In Case No. 2002-CA-52, she appeals from the trial court's judgment entry finding her in violation of a community control sanction and ordering her placement in the Miami Valley Juvenile Rehabilitation Center.
[2] The offense qualified as a fifth-degree felony because Bays had a prior delinquency adjudication for domestic violence.
[3] In In re Anderson, 92 Ohio St.3d 63, 2001-Ohio-131, the Ohio Supreme Court held that juvenile court judgment entries are subject to the Civ. R. 58(B) requirements concerning service and recording of service in the docket. Herein, Bays notes that her appeal from the trial court's January 23, 2002, judgment entry adjudicating her delinquent is timely under Anderson because the docket contains no notation that she was served as required by Civ. R. 58(B). The State does not dispute Bays' argument, and we see no notation of service in the trial court's docket. Accordingly, we agree that Bays' appeal from the trial court's January 23, 2002, judgment entry is timely.
[4] See, e.g., In re Styer, Union App. No. 14-02-12, 2002-Ohio-6273; Inre Sproule (Jan. 17, 2001), Lorain App. Nos. 00CA007575 and 00CA007580;In the Matter of Javis (Sept. 15, 2000), Ashtabula App. No. 99-A-0017.
[5] See also Juv. R. 3 (providing that a juvenile may waive certain rights, including the right to counsel, only with court permission).
[6] We note, however, that the wording of the trial court's explanation of its dispositional options implied that they might change if she denied the charge. The trial court began its explanation by saying, "Now, if you admit to this charge, the possible consequences are as follows. . . ." See Plea Hearing Transcript at 4. The trial court never mentioned that its dispositional options would be the same if Bays denied the charge. Given that Bays subsequently did deny the charge, the trial court's discussion of the range of allowable punishments arguably was deficient.
[7] The adjudicatory hearing transcript strongly suggests that Bays had little understanding of the benefits of obtaining counsel or the consequences of proceeding without an attorney. Bays appeared for the hearing but presented no witnesses, engaged in no cross examination, and made no closing argument in her own defense.
[8] We also find irrelevant the State's assertion that "[t]he practice of the Greene County Juvenile Court is to provide the telephone number of the public defender to the delinquent and her parents when a denial is entered on behalf of the child." As an initial matter, the State cites no record evidence to support this claim. In any event, providing a juvenile and her parents with the telephone number of the public defender does not satisfy a trial court's obligation to ensure that a waiver of counsel is voluntary, knowing, and intelligent.
[9] Bays' challenge to the sufficiency of the evidence is not moot because such a challenge, if successful, would bar a retrial. State v.Thompkins, 78 Ohio St.3d 380, 387, 1997-Ohio-52.
[10] As noted above, Bays' third assignment of error addresses the manifest weight of the evidence, and her fourth assignment of error challenges the adequacy of the notice she received prior to the revocation hearing.